**Gordon GOULD, Refac International, Limited, and Patlex Corporation, Plaintiffs,**

v.

**GENERAL PHOTONICS CORPORATION, Defendant.**

**No. C–78–1670 SC.**

United States District Court, N. D. California.

March 1, 1982.

Richard I. Samuel, Lerner, David, Littenberg & Samuel, Westfield, N.J., for plaintiffs.

James R. Hagan, Palo Alto, Cal., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONTI, District Judge.

### INTRODUCTION AND SUMMARY

This case came on regularly to be heard on February 8, 9, and 10, 1982, before the court sitting without a jury. The plaintiffs were represented by the firm of Lerner, David, Littenberg & Samuel, and the defendant was represented by James Hagan, Esq.

Plaintiff Gordon Gould holds a patent for optically pumped laser amplifiers issued by the United States Patent and Trademark Office on October 11, 1977 (No. 4,053,845). He alleges that the defendant has infringed and continues to infringe on this patent (the "patent-in-suit"). The defendant asserts that the patent in suit is invalid, and insists that the invention was previously made and patented by Dr. Charles Townes and Dr. Arthur Schawlow under two separately issued patents. The defendant further contends that the patent-in-suit was obvious from the prior art of Drs. Townes and Schawlow, and that it fails to adequately disclose how to build the invention as required by statute.

By issuing the patent-in-suit to plaintiff Gould, the Patent Office created a presumption of validity. That presumption can only be overcome by clear and convincing proof. Where the Patent Office has considered the most pertinent prior art before issuing the patent, the presumption of validity becomes even stronger. Plaintiff Gould has demonstrated that he retains a properly issued patent from the Patent Office. Furthermore, plaintiffs have presented evidence that the Gould patent was nonobvious, and that the patent discloses how to build the invention. The presumption of its validity is strengthened because the Patent Office considered the pertinent prior art, embodied in the Townes and Schawlow patents, when it issued the patent-in-suit.

The defendant has the legal burden of overcoming the presumption of validity. The defendant has offered no credible evi-

dence to rebut this presumption. No patent expert testified in favor of defendant's contentions, nor did defendant present any evidence to establish prior art.

██ The defendant, in an attempt to justify its lack of an adequate defense, asserts the unaffordable expense of litigating this matter. Defendant alleges that plaintiffs chose to litigate against it, before all other alleged infringers, because the others were more financially able to pursue an adequate defense to the patent-in-suit. However, the defendant's claims of disadvantage cannot excuse its. failure to rebut the presumption of patent validity plaintiffs have raised. Judgment therefore must be rendered in favor of plaintiffs as to the validity of the patent.

██ Through stipulation, the parties have determined the scope of the patent-in-suit and the reasonable damages for past infringement. The court is left to decide whether the defendant's conduct justifies an award of treble damages or attorney's fees. The defendant attempted to acquire a license from plaintiffs under the patent-in-suit during the infringement period, and, in other respects, acted in good faith. The defendant's conduct did not rise to the level of willful infringement necessary to justify an award of treble damages. Furthermore, the defendant's conduct was not sufficiently exceptional to permit an award of attorney's fees.

As and for further findings of fact and conclusions of law the court sets forth the following:

## FINDINGS OF FACT

*Jurisdiction and Venue*

1. Subject matter jurisdiction for plaintiffs' patent infringement claim is conferred upon this court by 28 U.S.C. § 1338(a). Venue for plaintiffs' patent infringement claim is properly laid in this court pursuant to 28 U.S.C. § 1400(b).

2. Subject matter jurisdiction with respect to defendant's counterclaim for a declaratory judgment is conferred upon this court by 28 U.S.C. §§ 1338(a) and 2201.

*Parties*

3. Plaintiff Gordon Gould, the patentee herein, is an individual born July 17, 1920. He presently is a citizen of the State of Virginia, residing at 9609 William Crossman Drive, Great Falls, Virginia.

4. Plaintiff Refac International Limited is a corporation of the State of Nevada, having its principal place of business at 122 East 42nd Street, New York.

5. Plaintiff Patlex Corporation is a corporation of the State of Pennsylvania, having its principal place of business at 44 West Lancaster Avenue, Ardmore, Pennsylvania.

6. Defendant General Photonics Corporation is a corporation of the State of California, having its principal place of business at 2255 F Martin Avenue, Santa Clara, California.

*The Patent-in-Suit*

7. U.S. Patent No. 4,053,845, the patent-in-suit, was issued October 11, 1977 to Gordon Gould as the inventor, and is entitled Optically Pumped Laser Amplifiers. Plaintiffs' Exhibit 1005.

8. The patent-in-suit was issued from Application Serial No. 498,065, filed August 16, 1974. That application was a continuation of Application Serial No. 644,035 filed March 6, 1967 (now abandoned) and Application Serial No. 804,540 filed April 6, 1959 (now abandoned). Application Serial No. 644,035 was a divisional application of Application Serial No. 804,540 and a continuation-in-part application of Application Serial No. 804,539, both of which were filed April 6, 1959.

9. Plaintiffs Refac International Limited and Patlex Corporation each have a sufficient interest in the patent-in-suit to be proper plaintiffs hereto.

*The Invention*

10. A light amplifier is a device which operates upon light of a given intensity and provides light having a greater intensity.

11. A light amplifier which operates upon the principle of stimulated emission of

radiation (i.e., a "laser") is one which employs atoms, ions, or molecules, and which amplifies light while maintaining the frequency, phase, and direction of propagation of the light being amplified. The term laser was coined by plaintiff Gordon Gould as an acronym for light amplication by stimulated emission of radiation.[1]

12. A light amplifier can be employed as an essential part of a light oscillator, just as other amplifiers (radio and sound) are commonly employed to construct oscillators.

13. In 1978, as a result of the issuance of the patent-in-suit, Gordon Gould was named Inventor of the Year by the Association for Advancement of Invention and Innovation. Gordon Gould subsequently received similar awards from the American Society of Inventors in 1980 and the Inventor's Club of America on November 20, 1981.

14. Through the 1950's, various people proposed different schemes to produce microwave amplification by stimulated emission of radiation (i.e., a "maser").

15. In or before January of 1957, plaintiff Gordon Gould proposed the construction of a microwave amplifier employing the principles of stimulated emission of radiation by optically exciting an amplification medium with unpolarized light (i.e., an optically pumped maser). This proposal was based upon the principle that, at thermal equilibrium, states in materials separated by microwave frequencies had substantially similar populations, notwithstanding the fact that the upper state always had a slightly lower population than the lower state and that the spontaneous decay rate between these states was relatively low. A population inversion was to be achieved by optically depopulating a lower level in the medium with light from a discharge in the same material.

16. On or before November 13, 1957, plaintiff Gordon Gould conceived of a light amplifier. Gould's initial light amplifier operated on the principle of stimulated emission of radiation and was the first rec-

ognition that, in order to energize a material to amplify energy in the visible light region with unpolarized light, it was necessary to employ a different scheme of energization and deenergization and different relationships of energy levels in the material than was true for microwave frequencies. Gould realized that, because the population differences in levels separated by light frequencies is substantial at room temperatures, and because the spontaneous decay rate for levels separated by light frequencies is so much greater than for those separated by microwave frequencies, the techniques suggested for microwave amplification by stimulated emission of radiation are totally inadequate for light amplification. Gould's initial effort contemplated using light emitted by a discharge from a given material as a pumping light source to pump the same material (the lasing medium). Thus, Gould initially suggested using potassium as a pumping light source to pump potassium as a lasing medium. Gordon Gould's Notebook No. 1, which recorded this conception, includes the first known use of the term "laser" and includes the page which has been displayed in the Smithsonian Institute. This notebook also suggested additional apparatus intended to cause the amplifier to oscillate.

17. By August 28, 1958, Gordon Gould has already written in final and highly organized form the first 23 pages of what eventually became an 87 page description of his inventions (hereinafter referred to as Gordon Gould Notebook No. 2).

18. The first 23 pages of Gordon Gould Notebook No. 2 were read, understood, and witnessed by Lawrence Wills on August 28, 1958, and thus were in existence at least as early as that date.

19. The first 23 pages of Gordon Gould Notebook No. 2 establish that Gordon Gould conceived of the invention set forth in the claims of the patent-in-suit at least as early as August 28, 1958.

1. The page of his notebook where plaintiff Gordon Gould first coined the word laser has been
displayed in the Smithsonian Institute.

20. From August 28, 1958 through December 1, 1958, Gordon Gould continued his activities, diligently completing Notebook No. 2, which was witnessed on December 1, 1958 by Richard T. Daily.

21. On or about December 2, 1958, Gordon Gould presented his patent attorney, Robert Keegan, Esq. with a written disclosure of his inventions which comprised his Notebook No. 2 and/or the TRG proposal which substantially incorporated the subject matter of his Notebook No. 2. From December 2, 1958 to April 6, 1959, Mr. Keegan diligently applied himself to the preparation and filing of Gordon Gould's original applications (filed on April 6, 1959) which led to the patent-in-suit, despite his simultaneous involvement in a complex and lengthy patent infringement trial in Utica, New York.

*The Alleged Prior Art*

22. U.S. Patent No. 2,929,922 (hereinafter the Schawlow and Townes '922 patent) was issued to Arthur Schawlow and Charles Townes on March 22, 1960, and is alleged by defendant as prior art vis-a-vis the patent-in-suit. The Schawlow and Townes '922 patent was the principal reference considered by the United States Patent and Trademark Office in the application which led to the patent-in-suit. The claims of the patent-in-suit were allowed as constituting a patentable invention over the Schawlow and Townes '922 patent.

23. The Schawlow and Townes '922 patent discloses a light amplifier in which a discharge lamp of a given gaseous material pumps a volume of the same material. Their preferred embodiment was potassium pumping potassium.

24. The other prior art relied upon by the defendant in this action is U.S. Patent No. 2,879,439 in the name of Charles Townes, which was issued on March 24, 1959, on an application filed January 28, 1958 (hereinafter the Townes '439 patent). The application leading to the Townes '439 patent was a continuation-in-part of U.S. patent application Serial No. 506,533, which was filed on May 6, 1955. This patent is less relevant than the art considered by the Patent Office.

25. To the extent that the Townes '439 patent contains disclosure of an optically pumped maser, this subject matter was discussed as prior art in the specification of the patent-in-suit and therefore was considered by the Examiner as prior art in issuing the patent-in-suit (see column 3, lines 1–20 of the patent-in-suit). The patent-in-suit (plaintiffs' Exhibit 1005) was issued October 11, 1977, based on an application filed in 1959 (as aforementioned).

*Infringement*

26. On October 4, 1977, defendant was placed on notice that plaintiffs considered each of defendant's optically pumped lasers to be an infringement of the patent-in-suit.

27. Each and every optically pumped laser amplifier apparatus, including each and every laser oscillator that employs optically pumped laser amplification manufactured, used, and/or sold by General Photonics since October 11, 1977, is covered by the claims of the patent-in-suit and, accordingly, infringes the patent-in-suit.

28. Following issuance of the patent-in-suit, defendant General Photonics infringed the patent-in-suit.

29. From the time of being placed on notice until the filing of this lawsuit, correspondence and negotiations continued between Burton Bernard, President of General Photonics, and Eugene Lang of Refac, during which it appeared that a license between General Photonics and Gould would be consummated. In fact, during an interview with Laser Report, Mr. Bernard stated that he expected to accept the royalty arrangement being asked by plaintiffs. During this time defendant acted in good faith and desired to enter into a licensing agreement as an alternative to expensive litigation costs which it could not afford. The defendant is a small company with 17 employees and a net worth of $135,000. Defendant suffered losses of $10,000 in 1979 and $4,000 in 1980, and made a profit of $6,000 in 1981.

30. Based upon the facts set forth above and the evidence in the case, acts of infringement by defendant have not been willful and deliberate.

## CONCLUSIONS OF LAW

1. United States Patent No. 4,053,845 (the patent-in-suit) is entitled to an effective filing date of April 6, 1959. 35 U.S.C. § 121.

2. The invention set forth in the patent-in-suit constitutes patentable subject matter as a new and useful machine or a new and useful improvement thereof. 35 U.S.C. § 101.

3. The claims of the patent-in-suit are not anticipated by Schawlow and Townes U.S. Patent No. 2,929,922 cited by the Patent Office Examiner who allowed said claims, by Townes U.S. Patent No. 2,879,439 relied upon by the defendant, the subject matter of which was considered by the Examiner, or by any other piece of prior art. 35 U.S.C. § 102; *Jones v. Vefco, Inc.*, 609 F.2d 409, 411 (9th Cir. 1979); *Saf-Gard Products, Inc. v. Service Parts, Inc.*, 532 F.2d 1266, 1270–71 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976).

4. The claims of the patent-in-suit are entitled to a date of conception of at least as early as August 28, 1958. 37 C.F.R. § 1.131; *Boyce v. Anderson*, 451 F.2d 818, 820 (9th Cir. 1971).

5. The filing by Gould of the original applications on April 6, 1959 constituted a constructive reduction to practice of the invention claimed in the patent-in-suit. *Id.*; *Hann v. Venetian Blind Corp.*, 111 F.2d 455, 458 (9th Cir. 1940).

6. Gordon Gould and his patent counsel were diligent toward a constructive reduction to practice (i.e., the filing of a patent application) between August 28, 1958, and April 6, 1959. The fact that Gould's patent attorney, Mr. Keegan, was able to prepare and file a 132-page patent application with 56 claims while simultaneously involved in a long infringement trial establishes diligence from at least as early as December, 1958 through the filing in April, 1959. The amount of work done by Gould in September, October, and November, 1958 clearly proves his diligence during that period, since Gould was not required to abandon his livelihood while completing the invention.

*Harper v. Zimmermann*, 41 F.2d 261, 268 (D.Del.1930).

7. The presumption of validity is entitled to particular weight because the patent-in-suit was granted after consideration by the Patent Office, *Berry Brother Corp. v. Sigmon*, 206 F.Supp. 653, 663 (W.D.N.C. 1962); *aff'd.* 317 F.2d 700 (4th Cir. 1963), and because the application was subjected to rigorous examination, *Grinnell Corp. v. American Monorail Co.*, 285 F.Supp. 219, 225 (D.S.C.1967).

8. The presumption of validity which attaches to the patent-in-suit pursuant to 35 U.S.C. § 282 can only be overcome by clear and convincing evidence. *Saf-Gard Products, Inc. v. Service Parts, Inc.*, 532 F.2d 1266, 1271 (9th Cir.); *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976). This presumption of patent validity becomes all the stronger when the Patent Office has considered the most pertinent references before issuing the patent. *Neff Instrument Corp. v. Cohu Electronics Inc.*, 298 F.2d 82, 86–87 (9th Cir. 1961).

9. The patent-in-suit is presumed to be sufficiently clear to teach those skilled in the art. *Western States Machine Co. v. S. S. Hepworth Co.*, 147 F.2d 345, 350 (2d Cir.), *cert. denied*, 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed.2d 1991 (1945); *Eversharp Inc. v. Fisher Pen Co.*, 204 F.Supp. 649, 671–72 (N.D.Ill.1961). This presumption is strengthened because the Patent and Trademark Office has already considered the issue of sufficiency of disclosure.

10. The specification of the patent-in-suit contains a written description of the invention and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the invention, and sets forth the best mode contemplated by the inventor for carrying out his invention. 35 U.S.C. § 112.

11. The specification of the patent-in-suit concludes with claims which particularly point out and distinctly claim the subject

matter which Gordon Gould regards as his invention. 35 U.S.C. § 112.

12. The defendant has without authority from plaintiffs made, used, and sold since October 11, 1977, and is presently making, using, and selling the patented invention as claimed in the patent-in-suit within the United States and, therefore, has directly infringed and is directly infringing the patent-in-suit. 35 U.S.C. § 271(a).

13. Under the circumstances of this case and by stipulation of the parties, the parties have agreed (in the event of a judgment in favor of plaintiffs) upon a licensing agreement which includes past infringement damages, royalty rate, scope of coverage, etc.

14. The infringement by the defendant was not willful, nor did defendant conspire with any others not to take a license.

15. The acts and conduct of the defendant in this case do not make this an "exceptional case" within the scope of 35 U.S.C. § 285.

16. The plaintiffs are awarded their costs of suit.