**PATLEX CORPORATION, INC., Refac International, Ltd., and Gordon Gould, Plaintiffs,**

v.

**Gerald J. MOSSINGHOFF, Commissioner of Patents and Trademarks, and The United States Patent and Trademark Office, Defendants,**

**and**

**Control Laser Corporation, Inc., Third Party Defendant.**

**Civ. A. No. 82–5472.**

United States District Court, E.D. Pennsylvania.

Nov. 17, 1983.

**716**

Jeffrey S. Saltz, Philadelphia, Pa., for plaintiffs.

Stanley M. Weinberg, Asst. U.S. Atty., Philadelphia, Pa., for defendants, Gerald J. Mossinghoff, et al.

T. Andrew Culbert, Edward M. Posner, Stewart Dalzell, Philadelphia, Pa., for third party defendant, Control Laser Corporation.

## MEMORANDUM OPINION

CAHN, District Judge.

### I. PRELIMINARY STATEMENT

This is an action for declaratory and injunctive relief. Plaintiffs, Patlex Corporation, Inc. ("Patlex") and Gordon Gould ("Gould" or "plaintiffs") seek an order declaring unconstitutional certain procedures used by defendant, United States Patent and Trademark Office ("PTO") in reexamining plaintiffs' patent. Plaintiffs originally filed this action against PTO Commissioner Gerald Mossinghoff and the PTO. On January 31, 1983, this court granted Control Laser Corporation, Inc., ("Control Laser") leave to intervene as a third party defendant. Refac International, Ltd., ("Refac"), was joined as a necessary party plaintiff on February 23, 1983.

Plaintiffs attack the constitutionality of 35 U.S.C. §§ 301–307, the statutory provisions which provide the framework for the PTO reexamination procedures. Patlex and Gould also challenge internal PTO regulations and operating procedures on constitutional grounds. Finally, plaintiffs ask this court to vacate the PTO's order which permitted the reexamination of plaintiffs' patents and to enjoin the PTO permanently from proceeding with the reexamination of those patents.

There are currently two motions before the court. One is plaintiffs' motion for preliminary injunction. The second motion is the defendants' motion to dismiss or in the alternative for summary judgment.[1] Defendants argue that plaintiffs have failed to exhaust administrative remedies and that plaintiffs' complaint fails to state a claim upon which relief can be granted. The issues presented by both motions are virtually identical. Accordingly, the court has consolidated the motions and will dispose of the arguments presented by the parties in a single opinion.

### II. FACTUAL AND PROCEDURAL BACKGROUND [2]

As the parties have submitted affidavits and presented witness testimony, defendant's motion will be treated as a Fed.R. Civ.P. 56 motion for summary judgment. Fed.R.Civ.P. 12(b)(6). Consequently, the pleadings must be construed liberally in a light most favorable to the plaintiff, and all doubt as to the existence of material facts must be resolved against the moving party. *Lynn v. Heyl and Patterson, Inc.*, 483 F.Supp. 1247, 1250 (W.D.Pa.1980), *aff'd*, 636 F.2d 1209 (3d Cir.1980); *Smith v. Webb*, 420 F.Supp. 600, 601 (E.D.Pa.1976). With these standards in mind, the factual and procedural background of this action is described below.

On April 6, 1959, Gordon Gould filed an application with the PTO, Serial No. 804,-

---

1. At the February 21, 1983, hearing before this court, the parties agreed that there were two motions pending, and that the court would treat plaintiffs' motion as a motion for permanent injunctive relief. (R. 6). At the same hearing, the parties also agreed that whatever determination was made on the two motions would constitute a final order in this case. *Id.*

2. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, 28 U.S.C. § 1338(a) and 28 U.S.C. § 2201. Venue is proper in this district under 28 U.S.C. § 1391(e)(4). Defendants' argument that plaintiffs have failed to exhaust administrative remedies in this case will be addressed in part III B of this opinion.

540, which included claims to various inventions in the field of laser technology. On October 11, 1977, Gould was issued United States Patent No. 4,053,845 (the " '845 patent"). This patent pertains to Gould's alleged invention of an optically pumped light amplifier. Gould was granted a second patent, No. 4,161,436 (the " '436 patent") on July 17, 1979. The '436 patent was issued for a method of energizing a material through the use of light amplifier aparatus. After obtaining the '845 and '436 patents, Gould entered into agreements with Patlex and Refac, whereby Patlex and Refac obtained a percentage interest in the gross revenues generated by licensing the '845 and '436 patents. In return, Refac and Patlex assumed responsibility for enforcement of the patents and for the prosecution of the patent applications.

Gould, Patlex and Refac commenced civil actions to restrain the infringement of the '845 and '436 patents soon after obtaining the patent rights. At the time, there was widespread use in the laser industry of devices arguably covered by the patents. This fact, coupled with the financial restraints of widespread litigation, convinced plaintiffs to adopt a strategy of selectively enforcing the Gould patent rights. Plaintiffs identified and sued "representative" infringers with the intent to use favorable judgments to convince prospective infringers to execute licensing agreements.

On October 19, 1977, Gould filed suit in the United States District Court for the Middle District of Florida against Control Laser for infringement of the '845 patent.[3] Less than one year later, on July 26, 1978, Gould filed suit in the United States District Court for the Northern District of California against General Photonics Corporation, also for infringement of the '845 patent.[4] On March 1, 1982, that court held the '845 patent valid, and determined that the '845 patent had been infringed by General Photonics. *Gould v. General Photonics Corporation,* 534 F.Supp. 399 (N.D.Cal. 1982). This result was obtained, however, over General Photonics' protestations that it lacked the resources to mount an adequate defense to the lawsuit.

More extensive litigation surrounding the Gould patents followed. On November 1, 1979, Gould filed suit against Lumonics Research, Ltd., ("Lumonics") in the United States District Court for the Northern District of Illinois, for infringement of the '436 patent.[5] In January of 1980, General Motors Corporation ("General Motors") intervened in the action as a defendant, and eventually settled with Gould by signing a license agreement. That case proceeds against Lumonics, and a trial date is expected to be assigned in the near future. On July 9, 1982, Bell Telephone Laboratories, Inc., ("Bell Labs"), Western Electric Company, Inc., and American Telephone & Telegraph Company, Inc., brought suit in the United States District Court for the Southern District of New York against Gould, Patlex and Refac.[6] Those plaintiffs seek a declaratory judgment that the '845 and '436 patents are invalid and have not been infringed by plaintiffs in that action. Gould, Patlex and Refac have filed counterclaims for infringement of the two Gould patents. That case is not now being actively litigated by the parties.

On December 12, 1980, Congress amended Title 35 of the United States Code, and

---

**3.** This case is filed in the United States District Court for the Middle District of Florida at No. 77–438–Orl–Civ–Y. Eventually, a subsequent action in the same district brought by Gould against Control Laser for infringement of the '436 patent was consolidated with the earlier lawsuit. The suit pertaining to the '436 patent was No. 78–344–Orl–Civ–Y, filed July 25, 1978.

**4.** This case is filed in the United States District Court for the Northern District of California at No. C–78–1670–SC.

**5.** This case is filed in the United States District Court for the Northern District of Illinois at No. 79C 4594.

**6.** This case is filed in the United States District Court for the Southern District of New York at No. 82 CIV 4508.

added Chapter 30, 35 U.S.C. §§ 301–307.[7] These provisions outline a procedure for the reexamination of patents by the PTO. Previously, patent reexamination and validation was committed to the United States District Courts and, in some limited situations, to the PTO.[8] Under 35 U.S.C. §§ 301–307, the Patent and Trademark Office Commission is authorized to reexamine patents *sua sponte*, 35 U.S.C. § 303, or upon request, 35 U.S.C. § 302.

The PTO promulgated rules governing the administration of the new patent reexamination procedure, 37 C.F.R. § 1.510–1.-570, and added new provisions to its Manual of Patent Examining Procedures ("M.P.E.P."). These regulations mandate that all reexamination requests be accompanied by a $1,500 filing fee. 37 C.F.R. § 1.510(a). If reexamination is not instituted, $1,200 is refunded to the requester of the reexamination proceeding. 37 C.F.R. § 1.515(b). A reexamination request is considered filed when the fee is paid. The request is considered *ex parte* by the PTO, and the PTO does not permit the patent owner to challenge the request for reexamination. 37 C.F.R. § 1.530(a). The regulations state that "no statement . . . by the patent owner . . . will . . . be acknowledged or considered in making the determination" of whether to reexamine. *Id.* Within three months of the filing of the reexamination request, a PTO examiner determines whether "a substantial new question of patentability . . . is raised by the request". 35 U.S.C. § 303. Where any doubts exist, the PTO examiner should resolve all questions in favor of granting the reexamination request. M.P.E.P. § 2286. If it is determined that a substantial new question of patentability is raised, the examiner will enter an order for reexamination. 35 U.S.C. § 304; 37 C.F.R. § 1.525. Within a period of not less than two months after the reexamination order, the patent owner may file a statement dis-

cussing new questions of patentability and other issues he deems appropriate. 35 U.S.C. § 304; 37 C.F.R. § 1.530(b). If such a statement is filed, the original requester may, within two months, file a reply. 37 C.F.R. § 1.535. Upon completing reexamination, the examiner may find all patent claims patentable over prior art. If so, a certificate confirming the patentability of the claims is issued. 35 U.S.C. § 307. If the PTO determines that a claim is unpatentable, an "action" is entered explaining this finding. At that time, the patent owner may seek review of the examiner "action" by filing a timely written response with the PTO, and by serving that response on the party who requested reexamination. 37 C.F.R. § 1.550. If the examiner continues to hold claims unpatentable after considering the patent owner's response, a final "action" is issued. 37 C.F.R. § 1.570. Adverse final actions can be appealed by patent owners to the PTO Board of Appeals. 35 U.S.C. § 306. After exhausting these administrative procedures, judicial review of adverse decisions by the PTO Board of Appeals is available (1) on the administrative record in the United States Court of Appeals for the Federal Circuit, or (2) by trial *de novo* in the United States District Court for the District of Columbia. *Id.*

Apparently, circumstances in another patent controversy resulted in the reexamination request which is the subject of this action. On December 24, 1980, Gould filed suit against the Commissioner of the PTO, Gerald J. Mossinghoff, in the United States District Court for the District of Columbia. Gould sought review of a decision by the PTO Board of Appeals, which had denied a patent to another of his claimed inventions. In response to a request by Gould to reschedule a hearing, the PTO filed a paper entitled "Commissioner's Opposition" on August 23, 1982. In the paper, the PTO

---

7. Bill entitled "To amend the patent and trademark laws", Pub.L. No. 96–517 § 1, 94 Stat. 3015 (1980), effective date July 1, 1981.

8. The PTO had possessed and continues to possess authority to hold reissue proceedings initiated by a patent holder, and to adjudicate interference proceedings solely where priority of invention is at issue. *See* 35 U.S.C. § 251.

questioned the validity of the '845 and '436 patents, even though they were not in issue before the court in that case.

The jury trial in the United States District Court for the Middle District of Florida involving Control Laser was scheduled to begin on September 13, 1982. On August 25, 1982, counsel for Control Laser filed a copy of "Commissioner's Opposition" with the Florida court. Shortly thereafter, Control Laser submitted a reexamination request to the PTO for the '845 patent. On October 6, 1982, Control Laser moved for a continuance of the Florida infringement trial pending the outcome of its request for reexamination of the '845 patent by the PTO. The Florida court ruled that if the PTO ordered reexamination, trial would be stayed until the PTO's decision on reexamination was considered final. Control Laser's reexamination request was followed by three other requests. On September 8, 1982, Bell Labs submitted a request to reexamine the '845 patent. On September 29, 1982, Lumonics filed a request to reexamine the '436 patent. General Motors filed a request to reexamine the '436 patent on November 17, 1982.

After these reexamination requests were filed, Gould submitted papers to the PTO which stated reasons for denying all of the requests. The PTO refused to consider Gould's submissions and returned them. The PTO based its decision to return the Gould papers on the ground that 37 C.F.R. § 1.530(a) prohibits such submissions until the time that the reexamination request has been acted upon. The PTO granted the reexamination requests of Control Laser and Bell Labs for the '845 patent on November 16, 1982. The reexamination requests for the '436 patent, filed by Lumonics and General Motors, were granted on December 8, 1982.[9] Judge Maurice Paul, presiding in the Florida action, stayed proceedings in that case on February 3, 1983. *Gould v. Control Laser Corporation*, No.

78–344–Orl–Civ–Y (M.D.Fla. filed Feb. 7, 1983) (order granting stay of proceedings), *aff'd,* 705 F.2d 1340 (Fed.Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983).

As a result of the PTO decision to reexamine, the Florida trial has been indefinitely postponed. Plaintiffs filed the instant lawsuit on December 10, 1982, seeking injunctive and declaratory relief against the PTO. Plaintiffs argue that they have been deprived of various property rights retroactively, due to Congressional action in changing the reexamination procedure after Gould's patents had been issued. They premise this argument on the fifth amendment, the seventh amendment, and article III of the Constitution. Furthermore, plaintiffs argue that the reexamination procedures deprive them of due process of law, in that the procedures do not afford a patent holder the opportunity to be heard before the PTO rules on a reexamination request. Plaintiffs also contend that the PTO acted contrary to its statutory authority in refusing to consider a stay of reexamination proceedings under the circumstances of this case.

## III. DISCUSSION

### A. *Finality of Agency Action*

In general, an agency action is not reviewable by a federal court unless it is a "final agency action" within the meaning of the Administrative Procedure Act. 5 U.S.C. § 704. Defendants argue that the PTO's determination to reexamine the Gould patents is not reviewable in this court because no final agency action has occurred. Despite defendants' arguments to the contrary, the merits of the PTO determination are not now before me. Instead, plaintiffs challenge the constitutional validity of the statute and regulations

---

**9.** On April 14, 1983, the PTO initially rejected plaintiffs' claims to the '845 patent. Reexamination Nos. 90/000,253 and 90/000,254. Plain- tiffs' claims to the '436 patent were initially rejected on April 22, 1983. Reexamination Nos. 90/000,263 and 90/000,289.

pursuant to which the PTO ordered reexamination.[10]

▮ Federal courts are not required to await final agency action before considering facial challenges to new regulatory schemes. The Supreme Court considered a similar issue in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In that case, a major drug company challenged the validity of a Food and Drug Administration ("FDA") regulation. At the time the action was instituted, the FDA had not yet enforced the regulation. The Court considered whether the matter was ripe for judicial review, and concluded that review was appropriate under the circumstances. *Id.*, 387 U.S. at 156, 87 S.Ct. at 1519. In so holding, Justice Harlan focused upon two factors, "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.*, at 149, 87 S.Ct. at 1515.

▮ In this case, plaintiffs' challenge resembles that mounted by the drug company in *Abbott*, in that "the issue tendered is purely a legal one". *Id.* Plaintiffs here have mounted a facial challenge to the constitutional validity of the PTO reexamination statute and procedures. The language of the reexamination statute, PTO regulations and MPEP are attacked, but not the merits of interlocutory agency action. Therefore, fact-finding by the PTO

would not aid this Court in evaluating the merits of plaintiffs' arguments.[11]

Plaintiffs have also satisfied the second element of the *Abbott* test, in that they have alleged that the PTO reexamination procedures have had a direct and immediate effect on plaintiffs' day-to-day business affairs. *See Abbott Laboratories v. Gardner*, 387 U.S. at 152, 87 S.Ct. at 1517. In effect, plaintiffs contend that "hardship" will result from "withholding court consideration". *See id.*, at 149, 87 S.Ct. at 1515. Plaintiffs allege that the reexamination statutes and regulations deprive them of the ability to exploit the patents, which is accomplished by negotiating licensing agreements with other individuals and corporations. Furthermore, plaintiffs allege that the reexamination procedure has deprived them of important and valuable property rights.

The challenge mounted by plaintiffs does not seek to attack the merits of the PTO reexamination determination. Rather, plaintiffs challenge the validity of the entire reexamination process. For these reasons, plaintiffs are not required to await final agency action pertaining to the validity of the patents and may proceed in this case.

B. *Exhaustion of Administrative Remedies* [12]

Defendants argue that judicial review is improper at this time in this action, because

---

**10.** Thus, defendants' reliance on *Federal Trade Commission v. Standard Oil Company of California*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) is misplaced. In Standard Oil, review was sought of a Federal Trade Commission decision to issue a complaint. The Supreme Court found that this was a "threshold determination" by the agency, did not constitute final agency action, and was not immediately reviewable. *Id.*, 449 U.S. at 241, 101 S.Ct. at 493.

**11.** Moreover, in Abbott, the Court found the challenged regulations to be "final agency action" within the meaning of the Administrative Procedure Act. 387 U.S. at 149, 87 S.Ct. at 1516.

**12.** The distinction drawn between finality of agency action and exhaustion of administrative remedies has been noted in *Bethlehem Steel Corporation v. Environmental Protection Agency*, 669 F.2d 903 (3d Cir.1982):

> In general, exhaustion refers to the steps which the litigant must take, whereas finality refers to the conclusion of activity by the agency. As in the Standard Oil case, a party may take all the measures available to it in the administrative process to obtain relief, and yet not obtain a final reviewable order. It is also possible that an agency order may be final for purposes of appeal, even though the party has not pursued his administrative remedies to the end. For example, an agency order may be appealable under § 10(c) of the Administrative Procedure Act even though the aggrieved party still has a right to internal reconsideration or review.

*Id.*, at 908 (footnote omitted). Having determined that finality of agency action is not a bar to plaintiffs' cause of action, the court will now consider whether plaintiffs must exhaust administrative remedies before seeking judicial review.

plaintiffs have not exhausted the available administrative remedies. Both parties agree that *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290 (3d Cir.1982), is the authoritative discussion of the exhaustion requirement in this Circuit. In *Republic Industries*, the plaintiff made a facial challenge to the constitutionality of the Multiemployer Pension Plan Amendment Act of 1980 (MPPAA). Republic's primary constitutional objection was that the MPPAA violates the fifth amendment by imposing retroactive liability on employers. In addition, Republic raised claims under the fifth amendment and the seventh amendment. The MPPAA provides that any disputes concerning the amount of withdrawal liability must be resolved through arbitration. In *Republic Industries*, plaintiff had not submitted to arbitration before seeking judicial review of the MPPAA's constitutionality. The district court dismissed the complaint on the ground that Republic had failed to exhaust its administrative remedies.

In reversing, Judge Aldisert held that Republic's facial constitutional challenge to the MPPAA made the exhaustion doctrine inapplicable. He explained that "the exhaustion doctrine presupposes an adequate administrative remedy," which satisfies the three important policy justifications for exhaustion. *Id.*, at 295. First, adherence to the doctrine furthers the goal of deference to Congress' decision to vest in an administrative tribunal the authority to act as the initial forum for dispute resolution. *Id.*, at 293. Second, administrative autonomy is furthered by the exhaustion doctrine, because unnecessary judicial interruption of the administrative process is avoided. *Id.* Finally, the exhaustion requirement fosters judicial economy by permitting an administrative tribunal to vindicate rights without judicial intervention, and by encouraging administrative fact finding. *Id.* In considering Republic's challenge to the MPPAA, Judge Aldisert stated that "no administrative remedy is adequate if it fails to satisfy the policy justifications of the doctrine." *Id.*, at 295.

Therefore, a court asked to evaluate the necessity for exhaustion must determine whether compelling the administrative remedy would further the three previously stated goals.

The court in *Republic Industries* determined that the facial constitutional challenge to the validity of the MPPAA was not a matter which could be resolved by mandating exhaustion. "To compel arbitration in the context of a facial challenge would promote neither deference to Congress nor administrative autonomy." *Id.*, at 296. In fact, Judge Aldisert found that arbitration mandated by statute would undermine the principle of separation of powers because the review of the constitutional validity of a statute is an exclusive prerogative of the judiciary. Nor would administrative autonomy be furthered, because the remedy of arbitration could not resolve the constitutional issues presented by Republic. *Id.* Finally, Judge Aldisert found that arbitration could neither moot the constitutional issues presented by resolving the matter on nonconstitutional grounds nor develop a factual background which would assist the district court in a subsequent determination of the constitutional issues. *Id.*, at 297.

A review of the *Republic Industries* case mandates the conclusion that the exhaustion doctrine is inapplicable to this case. Here, plaintiffs attack the validity of the PTO reexamination procedures on their face. Plaintiffs argue that the procedures established under the statutory grant and the PTO regulations retroactively deprive plaintiffs of rights previously vested in them under the patent laws of the United States. After evaluating plaintiffs' claims by using the analysis required by *Republic Industries*, I find that plaintiffs need not exhaust their administrative remedies. First, to compel exhaustion of administrative remedies in this case would neither promote deference to Congress nor further administrative autonomy. "The legislature could not have intended to defeat separation of powers principles by allowing an

administrative tribunal to review the constitutional validity of the statute—a function reserved for the judiciary." *Id.*, at 296. Therefore, the PTO could not be properly called upon to review the constitutional validity of the reexamination procedures. Second, as in the *Republic Industries* case, the reexamination statute itself provides for many of the procedures that plaintiffs challenge in this action. The patent examiner, the individual who determines the validity of the patent in the reexamination proceeding, has no authority to change the procedures under which reexamination is ordered. Likewise, the examiner has no authority to decide that the reexamination procedures deprive plaintiffs of vested rights to an article III tribunal or to a trial by jury under the seventh amendment. Nor does the examiner have the power to determine whether the reexamination procedures retroactively deprive plaintiffs of the presumption of validity that they claim attaches to the patents. As the court said in *Republic Industries,* "[a]dministrative autonomy thus becomes a meaningless concept under the circumstances, because regardless of the extent of the tribunal's autonomy, the [administrative agency] cannot provide the desired remedy." *Id.*, at 296.

Finally, the administrative remedy provided by the PTO, i.e., a determination that the Gould patents are either valid or invalid, fails to further the goal of judicial economy in the face of the constitutional challenge. This Court is mindful that "the mere allegation of the presence of constitutional issues does not excuse exhaustion". *Id.* "A litigant must show evidence of the administrative tribunal's incapacity either to moot constitutional issues or to establish a factual matrix for judicial review," before a court may dispense with the exhaustion doctrine. *Id.* In the instant case, the PTO cannot moot plaintiffs' constitutional claims by deciding relevant issues on nonconstitutional grounds. Plaintiffs' claims are purely constitutional. Even if the PTO resolved the reexamination proceedings in favor of plaintiffs, i.e., by finding the '845 and '436 patents to be valid, plaintiffs' constitutional claims would not be mooted. Plaintiffs challenge the procedure by which reexamination may be sought and ordered, and allege that the procedure itself violates important constitutional guarantees.

Moreover, any factual findings made by the PTO would not assist me in the later resolution of the constitutional issues presented. The only decision which the PTO can make concerns the validity of the patents challenged by various parties requesting reexamination. This determination, alone, would not be helpful to a court required to rule on the facial constitutionality of the reexamination procedures. The pertinent facts here concern the procedures themselves and those facts are presently available to this court.

For these reasons, under the analysis provided by *Republic Industries*, exhaustion of administrative remedies in this instance serves no useful purpose. If plaintiffs were forced to submit to the PTO reexamination procedure, the adjudication of the constitutional claims would merely be postponed. Thus, the underlying policy justifications for the exhaustion doctrine are absent in this context.

## C. *Constitutional Claims*

### 1. *Background*

Plaintiffs argue that the statutes and regulations which provide the framework for the reexamination process are unconstitutional for various reasons. They argue that the applicability of the reexamination procedures to patents existing before the enactment of the reexamination statute amounts to a retroactive taking of plaintiffs' property rights, in violation of the fifth amendment of the Constitution. Plaintiffs also claim that the PTO's rule prohibiting a patent holder from submitting position papers or statements prior to a PTO order for reexamination violates the due process clause, as it deprives a patent owner of an opportunity to be heard.

In evaluating plaintiffs' constitutional claims, I recognize that "legislative Acts adjusting the burdens and benefits of economic life" must be evaluated with a presumption of constitutionality. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). The burden is on one complaining of a due process violation "to establish that the legislature has acted in an arbitrary and irrational way". *Id.*, 428 U.S. at 15, 96 S.Ct. at 2892 (citations omitted). Thus, to succeed in their claims, plaintiffs must overcome the presumption of constitutionality which attaches to any Congressional enactment.

## 2. *Retroactivity of the Reexamination Statute*

Plaintiffs challenge the provision of the reexamination statute making it applicable to previously issued patents as an unlawful deprivation of property under the fifth amendment and as a violation of article III and the seventh amendment.[13] Specifically, plaintiffs argue that prior to the enactment of the reexamination statute, patents issued by the PTO had the following property attributes: (1) the patents gave the inventor exclusive rights in the patented invention for a term of years, which rights constituted property of the inventor or his assignee; (2) the patent, once it had been issued by the PTO, could not be declared invalid by the PTO, except in certain specific proceedings;[14] (3) otherwise, the patent could be declared invalid only by a court constituted under article III of the Constitution; (4) the patent owner had the right to submit issues of fact regarding patent validity to a jury constituted under the seventh amendment; (5) the patent owner enjoyed a statutory presumption of validity in any proceeding adjudicating the validity or infringement of the pat-

ent. 35 U.S.C. § 282. Plaintiffs argue that the retroactive nature of the reexamination statute unlawfully deprives the patent owner of these and other property rights in the patent.

In *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Court considered a fifth amendment challenge to the retroactive application of the Federal Coal Mine Health and Safety Act. That Act imposes liability on coal mine operators for black lung disease suffered by employee miners. A number of coal mine operators brought suit, averring that the Act was unconstitutional under the due process clause of the fifth amendment insofar as it required benefit payments to miners who left mine employment before the Act's effective date. The Court summarized the action by stating that "the Operators complain that to impose liability upon them for former employees' disabilities is impermissibly to charge them with an unexpected liability for past, completed acts that were legally proper, and at least in part, unknown to be dangerous at the time". *Id.*, 428 U.S. at 15, 96 S.Ct. at 2892. The Court ultimately upheld the constitutionality of the legislation, finding that Congress had acted in a rational way in so legislating. *Id.*, at 38, 96 S.Ct. at 2903.

Plaintiffs seek to distinguish *Usery* from the present case, urging that in *Usery*, Congress had merely "create[d] new types of liabilities and [applied] such liabilities retroactively to previous conduct."[15] But, plaintiffs' attempt to distinguish *Usery* on that ground is unpersuasive. In *Usery*, Congress imposed liability on the operators for acts done by them in the past which at the time done were proper, or at least not actionable. In much the same way, in the instant case, Congress has altered the bur-

---

**13.** Bill entitled "To amend the patent and trademark laws", Pub.L. No. 96–517, 94 Stat. 3015 (1980) effective date July 1, 1981 provides:

Section 1 of this Act [enacting 35 U.S.C. §§ 301–307] will take effect on the first day of the seventh month beginning after its enactment and *will apply to patents in force as of*

*that date or issued thereafter. Id.*, at 3027 (emphasis added).

**14.** *See* footnote 8, *supra.*

**15.** Plaintiffs Memorandum of Law in Opposition to Commissioner's Motion to Dismiss or in the Alternative for Summary Judgment, at 46.

dens and benefits associated with patent invalidation procedures. Moreover, in *Usery,* prior to the enactment of the Act, the Operators had never been subject to liability for the diseases suffered by their former employees. In contrast, patent owners have always been subject to the possibility that their patents would be declared invalid, in various proceedings before the PTO or before federal courts.[16] Thus, the burdens imposed by the enactment of the new reexamination procedures appear to be far less onerous than those imposed on the Operators who challenged the Act in *Usery.*

Moreover, I am not persuaded that Congress has eviscerated whatever procedural limitations on invalidation which may be vested in the patent owner. Plaintiffs argue that the new reexamination process deprives them of the right to seek redress in an Article III tribunal and of the right to a trial by jury. There is no evidence that these rights have been abolished by the new reexamination procedure. In fact, the judicial review provisions of 35 U.S.C. §§ 141–145 are made applicable to final PTO reexamination decisions by 35 U.S.C. § 306. It may be true that certain procedural aspects of the reexamination process have been altered by the new statutory scheme. For example, a patent owner may have to exhaust PTO reexamination procedures prior to bringing his case before an article III court. Nevertheless, neither of those rights have been abolished by the new procedures.

■ I am mindful that reasonable government regulation of property rights does not give rise to a constitutional violation, as it is not a taking without just compensation. Generally, a reasonable regulation on the exercise of property rights will be upheld as constitutional. *See Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Though there is no set formula for determining when a taking has occurred, certain factors of significance

have been recognized. *Id.,* 438 U.S. at 124, 98 S.Ct. at 2659. A court must look at the economic impact of the regulation on the plaintiff and also must look at the character of the government action. "A 'taking' may be more readily found when the interference with property can be characterized as a physical invasion by government, [citation omitted], than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Id.* There is no evidence here that physical invasion of plaintiffs' property has occurred. In fact, the decision to reexamine, of itself, does not eviscerate patent rights, and does not have an adverse economic impact on the plaintiffs. Furthermore, in this case, the character of the government action arises from a public program, i.e., the Congressional enactment of the reexamination statute, which attempts "to adjust the benefits and burdens of economic life to promote common good". *Id.* The legislature has attempted to enact a patent reexamination program which will give greater incentive to technological innovation and development by providing for an expeditious means of testing the validity of patents. Unlike *Penn Central,* where reasonable government regulation of a particular person's property rights was upheld, the patent reexamination procedure does not have an impact limited to the plaintiffs in this case. Instead, the new reexamination process is made applicable to all patent holders, past, present and future.

■ Plaintiffs here complain about the effect of Governmental action on "public rights". These rights "arise between the Government and persons subject to its authority". *Crowell v. Benson,* 285 U.S. 22, 50, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932). Public rights are created by Congress, and either impose new statutory obligations or confer new benefits on individuals or entities. It is clear that Congress has wide discretion in establishing tribunals, creating agencies or providing for adjudication

---

**16.** *See, e.g.,* 35 U.S.C. § 251, which governs reissue proceedings before the PTO. Reissue proceedings are initiated by the patent owner himself.

of the rights and obligations which result from such "public rights". *Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Commission*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). Against this background, I must evaluate plaintiffs' claims that the reexamination procedures deprive them of the opportunity to litigate before an article III court and also deprive them their seventh amendment right to a trial by jury.

▇▇▇▇ As previously discussed, it is apparent from the statutory framework of the reexamination procedure that plaintiffs will ultimately have the opportunity to litigate the validity of their patent in an article III tribunal. The reexamination process insures that the patent holder may either (1) appeal to the Court of Appeals for the Federal Circuit, on the administrative record, after the PTO has completed reexamination procedures or, (2) bring an action in the United States District Court for the District of Columbia, and obtain a trial *de novo* in that court. 35 U.S.C. § 307. Thus, plaintiffs may obtain review of any final PTO reexamination decision in an Article III court. Assuming plaintiffs do have a right to invoke the jurisdiction of an article III court, that right has not been abolished by the new reexamination scheme. Moreover, Congress is empowered to create statutory public rights, and assign their adjudication to an administrative agency. *Northern Pipeline Construction Company v. Marathon Pipe Line Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *see also Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Commission*, 430 U.S. at 455, 97 S.Ct. at 1269. Plaintiffs concede this much but complain that Congress may not make that decision retroactively, i.e., after creating a "public right". But I am not convinced that the passage of time saps Congress' authority to so act. The Court in *Usery v. Turner Elkhorn Mining Co.* made clear that retroactive Congressional action is not improper unless shown to be arbitrary and irrational. 428 U.S. at 15, 96 S.Ct. at 2892. Here, Congress has rationally legislated, by assigning an appropriate

function to an administrative agency, the PTO. I cannot find that this type of legislative decision-making offends plaintiffs' right to appear before an article III tribunal.

Plaintiffs also claim that they have been deprived of their seventh amendment right to a trial by jury. It is true that in an action for patent infringement, the litigants are entitled to a trial by jury. 35 U.S.C. § 281. Accordingly, plaintiffs would have tried the infringement case in the United States District Court for the Middle District of Florida before a jury, had not Judge Paul stayed that proceeding. But the new reexamination procedures did not deny plaintiffs the opportunity to litigate before a jury. Instead, Judge Paul's decision to stay the Florida trial appears to be the cause of plaintiffs' concern. I am not inclined to take action to counter the valid order of another member of the federal judiciary even if I could do so.

▇▇▇▇ Alternatively, plaintiffs cannot claim that they are constitutionally entitled to a trial by jury as part of the reexamination procedures. Once again, it has long been established that Congress may assign fact-finding and adjudicative functions in "public right" cases to administrative tribunals. This does not offend the seventh amendment right to a trial by jury. *Atlas Roofing Co., Inc. v. Occupational Safety and Health Commission*, 430 U.S. at 450, 97 S.Ct. at 1266. Again, under *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. at 15, 96 S.Ct. at 2892, I cannot find the Congressional action to be arbitrary or irrational.

▇▇▇ Plaintiffs also argue that the new reexamination scheme deprives them of the presumption of validity which attaches to patents under 35 U.S.C. § 282. Sections 2240 and 2244 of the M.P.E.P. provide that in considering a request for reexamination, the PTO shall resolve any doubts in favor of ordering reexamination. Plaintiffs contend that these provisions are directly contrary to 35 U.S.C. § 282, which requires

that every patent, once issued, be presumed valid.

The PTO, when considering a request for reexamination, is charged with determining whether a "substantial new question of patentability" has been raised by the reexamination request. 35 U.S.C. § 303. The validity of the patent itself is not determined at the time the PTO evaluates the reexamination request. When a reexamination request is filed the PTO must make a determination of whether or not to reexamine the patent. That decision is reached by investigating the existence of new questions of patentability. This process is entirely separate from issues of patent validity or invalidity. At the outset of the reexamination process, the PTO determines whether certain data were considered when the patent was originally granted. If the PTO determines that the data presented in the request for reexamination were not originally considered, a reexamination order may follow. Therefore, the validity or invalidity of the patent itself is not in question at the time reexamination is sought. For these reasons, the reexamination procedure does not deprive plaintiffs of their statutorily guaranteed presumption of validity under 35 U.S.C. § 282.[17]

### 3. *Alleged Denial of Opportunity to be Heard*

 Under the PTO reexamination procedures, 37 C.F.R. § 1.530(a), the patent owner is not permitted to submit any arguments or position papers to the PTO before the agency determines whether to grant a request for reexamination. Plaintiffs allege that this rule violates the due process clause by depriving the patent owner of an opportunity to be heard. Plaintiffs anchor their due process argument on the ground that the PTO rule has the practical effect of depriving plaintiffs of the ability to exploit the patents commercially. In other words, plaintiffs allege that when a request for reexamination is granted, their bargaining power as patent owners in some way deteriorates. This bargaining power, and the corresponding ability to exploit the patents and license the patents, is seen by plaintiffs as a right to which they cannot be deprived without due process of law.

In support of their argument, plaintiffs cite various cases for the proposition that the government must proceed carefully when depriving an individual of important property rights. *See, e.g., Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). However, this line of cases also stands for the proposition that a court must find a property right possessed by an individual before it may find a violation of due process through the denial of an opportunity to be heard. *See, e.g., id.,* 397 U.S. at 263 n. 10, 90 S.Ct. at 1018 n. 10. Here, plaintiffs complain that the reexamination procedure deprives them of their bargaining power. They argue that they have been prevented, due to the granting of the reexamination request, from licensing the patents and obtaining any financial return from them. However, the plaintiffs cannot show that the reexamination order has affected any licensing agreements presently in force, which were entered into by plaintiffs before reexamination was ordered. In other words, plaintiffs complain that due to the PTO's decision to reexamine, they have been denied their *prospective* ability to license and exploit the patents. I fail to view a prospective inability, i.e., future bargaining power, as a property right which may not be deprived without an opportunity to be heard.[18] As the Supreme Court stated in *Usery v. Turner Elkhorn Mining Co.,* "our cases are clear that legislation

---

**17.** Plaintiffs also argue that, because they have been deprived of the presumption of validity, Sections 2240 and 2244 of the M.P.E.P. amount to a "presumption of invalidity" which violates the PTO's statutory mandate as announced in 35 U.S.C. § 282. For the reasons discussed in the text, whereby I have denied plaintiffs' claim that they have been deprived of their right to a presumption of validity, this Court finds that the PTO has not acted contrary to its statutory mandate in promulgating Sections 2240 and 2244 of the M.P.E.P.

**18.** I also note that without more, the decision to reexamine, of itself, does not invalidate patent rights.

readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations". 428 U.S. at 16, 96 S.Ct. at 2893. In this case, plaintiffs complain that governmental activity arguably affects the exercise of future action in which they may or may not engage. That claim does not give rise to a violation of the due process clause. *See Fleming v. Rhodes*, 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947). Therefore, I do not find that plaintiffs were denied an opportunity to be heard prior to the deprivation of important property rights. I hold that the future exercise of plaintiffs' bargaining power, vis-a-vis the patents, does not constitute an important property right.

Plaintiffs go on to argue that the PTO reexamination fee structure violates the Due Process Clause. Under PTO procedures, the basic fee for filing a reexamination request is $1,500. 37 C.F.R. § 1.510(a). If reexamination is not ordered, $1,200 is refunded to the requester. 37 C.F.R. § 1.515(b). Alternatively, if the agency goes forward with reexamination, the PTO retains the entire $1,500. This arrangement, plaintiffs assert, violates their due process rights in much the same manner as when a portion of fines assessed by a court is funneled back to the judge as compensation. *See, e.g., Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

I am convinced that the PTO fee structure does not violate plaintiffs' due process rights. There is no evidence that the decision to reexamine personally benefits any PTO employee. Nor has plaintiff shown that, like the village in *Ward*, the PTO will derive substantial revenues from collecting fees in reexamination cases. To summarize, plaintiffs have made no showing that the fee structure offers PTO examiners "a possible temptation ... to forget the burden of proof required" for ordering reexamination. *Ward v. Village of Monroeville*, 409 U.S. at 60, 93 S.Ct. at 83 (citation omitted).

### D. *PTO Refusal To Stay Reexamination*

Before instituting this action, plaintiffs requested that the PTO stay the reexamination proceedings, in view of the action pending against Control Laser in the United States District Court for the Middle District of Florida. The PTO denied plaintiffs' request for a stay. Under the terms of M.P.E.P. § 2286, the PTO will stay reexamination proceedings only in cases where trial in a civil action for patent infringement has already commenced. Plaintiffs assert that M.P.E.P. § 2286 is wholly arbitrary and is contrary to the authorization of the reexamination statute. The new reexamination procedures are designed to permit the efficient and expeditious resolution of questions of patent validity. M.P.E.P. § 2286, plaintiffs argue, runs counter to this purpose, for it requires the PTO to continue with a request for reexamination even though a pending lawsuit pertaining to the identical patent is ready for trial. Not surprisingly, plaintiffs point to their own circumstances as exemplifying the problems of M.P.E.P. § 2286.

I recognize that the Florida court's decision to stay the civil action pending the outcome of the reexamination proceedings may have caused plaintiffs some hardship in this case. However, I find that M.P.E.P. § 2286 represents a reasonable attempt by the PTO to accommodate potential conflicts between trial schedules and patent reexamination proceedings before the agency. Accordingly, I cannot find that M.P.E.P. § 2286 is arbitrary or contrary to the PTO's statutory authorization.

### IV. CONCLUSION

For the foregoing reasons, I find the challenged provisions of the PTO reexamination procedures to be constitutional. Defendants' Motion for Summary Judgment will be granted, and an appropriate order will be entered.