PATLEX CORPORATION, et al., Appellants,

v.

Gerald J. MOSSINGHOFF, etc., et al., Appellees.

Appeal No. 84–699.

United States Court of Appeals, Federal Circuit.

March 7, 1985.

---

Alan J. Davis, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellants. With him on brief was Jeffrey S. Saltz, Philadelphia, Pa.

John F. Pitrelli, Associate Sol., Arlington, Va., for appellee PTO. With him on brief were Joseph F. Nakamura, Sol. and John W. Dewhirst, Associate Sol., Washington, D.C.

Edward M. Posner, Drinker, Biddle & Reath, Philadelphia, Pa., for appellee Control Laser.

Before MARKEY, Chief Judge, and FRIEDMAN and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Appellants are Patlex Corporation and Gordon Gould. Appellees are Gerald J. Mossinghoff in his capacity as Commissioner of Patents and Trademarks; the United States Patent and Trademark Office; and intervenor Control Laser Corporation.

The issue is whether certain provisions of the patent reexamination statute and implementing regulations are in violation of: the due process clause of the Fifth Amendment to the Constitution;[1] the jury trial guarantee of the Seventh Amendment;[2] Article III which vests judicial power in the courts of the United States; or the statutory mandate of Congress. The issue arises from the retroactive effect of Public Law No. 96–517, Act of Dec. 12, 1980, 96th Cong., 2d Sess., 94 Stat. 3015 (codified at 35 U.S.C. §§ 301–307 (1981)); of Patent and Trademark Office administrative rules 37 C.F.R. §§ 1.26(c) and 1.530(a); and of Manual of Patent Examining Procedure (MPEP) §§ 2240, 2244, and 2286 (5th ed. Aug. 1983); all expressly made applicable to patents granted before passage of the statute and adoption of the rules. Issues relating to the presumption of validity, 35 U.S.C. § 282, are also raised.

The District Court for the Eastern District of Pennsylvania, Judge Cahn presiding, in an opinion that carefully analyzed the constitutional and statutory considerations, upheld the challenged provisions. *Patlex Corp. v. Mossinghoff*, 585 F.Supp. 713, 220 USPQ 342 (E.D.Pa.1983). We affirm the decision as it pertains to 35 U.S.C. §§ 301–307 and 282 and MPEP § 2286, and vacate for lack of justiciable controversy with respect to 37 C.F.R. §§ 1.26(c) and 1.530(a) and MPEP §§ 2240 and 2244.

## I. Background

Appellants Patlex Corporation and Gordon Gould (Gould) are owners of the two United States patents that gave rise to this action. The patents pertain to laser tech-

---

1. The pertinent part of the Fifth Amendment provides "No person shall be ... deprived of ... property, without due process of law...."

2. The Seventh Amendment provides in pertinent part, "In Suits at common law ... the right of trial by jury shall be preserved...."

nology and were granted before passage of the reexamination statute. On October 11, 1977 the Patent and Trademark Office (PTO) issued Patent No. 4,053,845 for Gordon Gould's basic invention of an optically pumped light (or laser) amplifier. On July 17, 1979 the PTO issued Patent No. 4,161,-436 for Gordon Gould's invention of a method of energizing a material utilizing light amplifier apparatus. Both patents resulted from an application filed on April 6, 1959; the unusually long pendency periods were due to extensive and vigorously contested patent interferences. On October 19, 1977 Gould filed suit against the Control Laser Corporation in the United States District Court for the Middle District of Florida, asserting infringement of the '845 patent. Subsequent suits filed by Gould also involved the '436 patent, against Control Laser and others, in various forums.

Some three years after the Florida suit was filed Congress enacted Public Law No. 96–517. Under 35 U.S.C. § 301, any person may call to the PTO's attention prior art that may have a bearing on the patentability of any claim. On the basis of that prior art, § 302 provides that any person may request the PTO to reexamine any claim of the patent. Section 303 requires the PTO, within three months of such request, to determine whether the prior art raises "a substantial new question of patentability". If such a question is raised then the PTO will order that the patent be reexamined, in accordance with §§ 304 and 305. Upon reexamination the PTO may confirm any patentable claim or cancel any unpatentable claim, and claims may be amended or added, as set forth in § 307. Section 306 provides for appeals by a patentee dissatisfied with the result. The statute took effect on July 1, 1981, and by its terms applies to unexpired patents issued before as well as after that date. Pub.L. No. 96–517, § 8(b), 94 Stat. 3015, 3027.

Meanwhile, Gould's preparation for trial proceeded, and on June 2, 1982 the Florida

district court set the case for jury trial beginning September 13, 1982. On September 7, 1982, with the assent of the district court, Control Laser submitted to the PTO a request under 35 U.S.C. §§ 301–302 for reexamination of the '845 patent. On September 8, 1982 the Florida case was reassigned to another judge (for reasons unrelated to the reexamination request) and jury trial was rescheduled for November 1, 1982.

On October 6, 1982 Control Laser moved the Florida court for a continuance in view of the pending reexamination request. The court granted the motion on October 12, 1982, ruling that if the PTO decided to order reexamination in accordance with §§ 303–304 trial would be postponed "until the decision of the Patent Office is considered final"; and that if the PTO denied the request for reexamination, trial would begin during the first quarter of 1983. Gould appealed that ruling to this court. We dismissed the appeal on the ground that the grant of a continuance is within the discretion of the trial court and is not an appealable order. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 217 USPQ 985 (Fed.Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983).

Gould also filed papers directly with the PTO, asking them not to proceed with Control Laser's request for reexamination nor with other subsequently filed reexamination requests [3] in view of the pending litigation and because reexamination was not, in Gould's view, warranted. Gould's efforts to communicate with the PTO were impeded, however, by 37 C.F.R. § 1.530(a):

> Except as provided in § 1.510(e), no statement or other response by the patent owner shall be filed prior to the determinations made in accordance with §§ 1.515 or 1.520. If a premature statement or other response is filed by the patent owner it will not be acknowledged

---

**3.** On September 8, 1982 Bell Laboratories requested the PTO to reexamine the '845 patent. Lumonics Research Ltd. and General Motors Corporation filed requests for reexamination of

the '436 patent on September 29, 1982 and November 17, 1982 respectively. General Motors requested reexamination of the '845 patent on May 13, 1983.

or considered in making the determination.

Consistent with this rule the PTO issued "Decision(s) Returning Improper Paper" in response to Gould's several submissions.

On November 12, 1982 Gould petitioned the Commissioner to stay the reexamination proceeding in light of the extensive and completed preparations for trial. The Commissioner denied that request on December 8, 1982, holding that the petition was improper under 37 C.F.R. § 1.530(a). In addition, the Commissioner noted that the issue was moot because the PTO had granted Control Laser's request for reexamination on November 16 and the Florida litigation had been stayed until the final reexamination decision. Gould includes 37 C.F.R. § 1.530(a) in his constitutional challenge and also the provision of the MPEP on which the PTO relied. That provision, MPEP § 2286, provides in pertinent part as follows:

> In view of the statutory mandate to make the determination on the [reexamination] request within three months, the Office realistically has no choice but to make the determination on the request based on the record before the examiner without awaiting a decision by the Federal court.... If reexamination is ordered the reexamination will continue until the Office becomes aware that a trial on the merits has begun at which time the reexamination proceeding normally will be stayed, *sua sponte* by the examining group director unless a proper petition to stay has been filed which is not rendered moot by the *sua sponte* stay.

Thus, under MPEP § 2286 Gould could not obtain from the PTO a stay of reexamina-

tion because the trial in the Florida proceeding had not "begun".

Gould then sued the Commissioner of Patents and Trademarks in the District Court for the Eastern District of Pennsylvania,[4] asking that court to enjoin the Commissioner from going forward with the reexamination, and raising the constitutional challenges now before us. The court granted Control Laser leave to intervene as a party defendant. Although there was conflicting evidence and argument on the extent and significance of the reexamination's adverse effect on Gould, the Commissioner and Control Laser moved for summary judgment. The court granted that motion on November 17, 1983, upheld the constitutionality of the reexamination statute including its retroactive impact on issued patents, and sustained the lawfulness and constitutionality of the challenged rules and regulations.[5]

## II. The Issues

The declaration that an Act of Congress is unconstitutional "is the gravest and most delicate duty that this Court is called on to perform", as Justice Holmes recognized in *Blodgett v. Holden*, 275 U.S. 142, 148, 48 S.Ct. 105, 107, 72 L.Ed. 206 (1927). Gould has challenged a major feature of the reexamination statute—whereby Congress made it applicable to the million or so of unexpired patents in order to achieve an immediate impact on the patent incentive for invention and innovation.

The fundamental questions are: Did Gould have vested property or other interests which are protected by the Fifth Amendment, the Seventh Amendment, or Article III, against the retrospective effect of patent reexamination? If so, did the

---

**4.** For additional details see the decision of the district court, *supra*.

**5.** Although the adverse effects asserted by Gould are in consequence of the decision of the Florida court to stay that trial if the PTO ordered reexamination, Gould's position is that the reexamination statute, by its retroactive effect, enabled that result. The Pennsylvania district court held that Gould had met the requirements for bringing a facial challenge against the con-

stitutional validity of the statute. 585 F.Supp. at 720–722, 220 USPQ at 347–349. The district court based its jurisdiction on 28 U.S.C. sections 1131, 1338(a), and 2201; venue was based on 28 U.S.C. section 1391(e)(4). Gould filed notices of appeal concurrently to the Third Circuit and the Federal Circuit; on motion of appellees to the effect that jurisdiction resided in the Federal Circuit, the Third Circuit dismissed that appeal for lack of jurisdiction.

provisions of Public Law 96–517 or any of its implementing regulations effect a deprivation of protected interests? If there was such a deprivation, what are its constitutional consequences? Gould also raises questions concerning the implementation and interpretation of the reexamination statute, and the validity of certain PTO regulations, rules, and practices.

### A. The Property Rights at Issue

■ The basic right concomitant to the grant of a patent is the right of exclusivity founded in the Constitution. The patent law in force at the time that Gould's patents were issued embodied a bundle of rights in implementation of this exclusivity, including the foundational right to exclude others from practice of the patented invention.[6]

■ It is beyond reasonable debate that patents are property. In *Consolidated Fruit Jar Co. v. Wright*, 4 Otto 92, 96, 94 U.S. 92, 96, 24 L.Ed. 68 (1876) the Supreme Court stated:

A patent for an invention is as much property as a patent for land. The right rests on the same foundation and is surrounded and protected by the same sanctions.

In *Leesona Corp. v. United States*, 599 F.2d 958, 966–69, 220 Ct.Cl. 234 (1979) that court affirmed that patents are property and therefore subject to the principles of eminent domain. *See Johnson & Johnson, Inc. v. Wallace A. Erickson & Co.*, 627 F.2d 57, 59, 206 USPQ 873, 876 (7th Cir. 1980), wherein the court wrote:

The seventeen-year exclusion is a right and not a matter of grace or favor.... It is a property right ... of which the

patentee cannot be deprived without due process of law.

But for the position urged by Control Laser and the Patent and Trademark Office,[7] we would not belabor the point that patent property rights, necessarily including the right "to license and exploit patents", fall squarely within both classical and judicial definitions of protectible property. Suffice to cite the scholarship of Jeremy Bentham, who defined property as "the collection of rules which are presently accepted as governing the exploitation and enjoyment of resources. So regarded, property becomes 'a basis of expectations' founded on existing rules; that is to say, property is the institutionally established understanding that extant rules governing the relationships among men with respect to resources will continue in existence.... It is supposed that men will not labor diligently or invest freely unless they know they can depend on rules which assure them that they will indeed be permitted to enjoy a substantial share of the product as the price of their labor or their risk of savings." [8]

■ Bentham's analysis is particularly apt with respect to patent property, which is granted by the government for precisely the reasons he presents. The encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude. As the Supreme Court observed in *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 100 S.Ct. 383, 391, 62 L.Ed.2d 332 (1979), the "right to exclude others" is "one of the most essential sticks in the bundle of rights that are commonly characterized as property". And as this court stated in *Smith International, Inc. v. Hughes Tool Co.*,

---

**6.** Under 35 U.S.C. § 154 a patent grants "to the patentee ... for the term of seventeen years ... the right to exclude others from making, using, or selling the invention...."

35 U.S.C. § 261 provides that "[s]ubject to the provisions of this title, patents shall have the attributes of personal property."

**7.** Control Laser asserts that "[t]he 'property interests' Gould claims as 'historic attributes' of his patents do not exist...." The Commission-

er states that "[t]he prospective ability to license and exploit patents is not a 'property right' protected by the due process clause."

**8.** J. Bentham, *Theory of Legislation* chs. 7–10 (6th ed. 1890), as discussed in Michelman, *Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law*, 80 Harv.L.Rev. 1165, 1211–12 (1967) (footnotes omitted).

718 F.2d 1573, 1577–78, 219 USPQ 686, 689–90 (Fed.Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983), without the right to exclude "the express purpose of the Constitution and Congress, to promote the progress of the useful arts, would be seriously undermined." This right is implemented by the licensing and exploitation of patents.

### B.  The Effect of Reexamination on Gould

The legislative history and extensive hearing record do not treat the enforceability of an issued patent during the period of reexamination, but Gould's experience, of which he complains, is instructive.

Gould asserts that he has been deprived in effect, if not in law, of the right to exclude, for whatever undefined period will be required by the PTO to complete its reexamination plus the period required by any appeals from an adverse PTO decision. Gould argues that he has already had extensive PTO examination, seventeen years' worth, and that at the time his patents issued he was free of the possibility of further administrative delay in enforcing the rights that accompanied the patent grant at the time he received it. The grant of Gould's patents in 1977 and 1979 triggered activities by Gould, such as the negotiation of licenses and the suing of accused infringers, in accordance with and in reliance on the patent statute then in existence. Relying on what he viewed as the bundle of rights and attributes encompassed by Title 35 as it stood in 1977 and 1979, Gould acted in accordance with the existing law. Gould asserts that the retroactive application of Public Law 96–517 deprived him of the rights that he was actively proceeding to enforce. Gould invokes the protection of the Constitution.

The rights and attributes that Gould asserts were affected by the retroactive force of the statute are: (1) the right to exclude during reexamination; (2) the right to a

jury trial on issues being reexamined; (3) the right to judgment by an Article III court on those issues; (4) the presumption of validity during reexamination; (5) several years of patent life lost to reexamination; and (6) the right to earn economic benefits during reexamination. Gould notes that only after completion of reexamination including any subsequent appeals can he pick up where he was in the fall of 1982, reschedule the jury trial, and relitigate before an Article III court the identical issues before the PTO in reexamination.

In response, Control Laser and the PTO assert not only that there has been no constitutionally cognizable taking of Gould's patent rights but also, as noted *ante,* that no protectible property rights are involved. Appellees also argue that Congress acted rationally in making the reexamination statute retroactive, emphasizing the reasonableness of this governmental regulation of "federally created property rights", and that Congress merely provided "an additional forum for resolving the ever-present patentability issue". Appellees insist that Gould is not hindered from full enjoyment of his patents during reexamination.

The district court accepted, for purposes of summary judgment, inferences favorable to Gould on his assertions that reexamination caused loss of licensing and exploitation opportunities and delay[9] in enforcement opportunities; it is on this basis that we review whether the reexamination of Gould's preexisting patents caused a deprivation of property of constitutional dimension.

### III.  The Fifth Amendment

◼ The Fifth Amendment reflects a historic hostility to retroactive legislation, grounded in the common law. Our jurisprudence dealing with retroactive civil laws has had a long evolution, in adaptation to the complexities of the nation's growth.[10]

---

**9.** The stay of the Florida trial is not at issue. See 585 F.Supp. at 725, 220 USPQ at 352.

**10.** See Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73

The presumption of correctness that accompanies Congressional action is thus subject to an important restraint:

It does not follow, however, that what Congress can legislate prospectively it can legislate retrospectively. The retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former.

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16–17, 96 S.Ct. 2882, 2893, 49 L.Ed.2d 752 (1976). To this point is the recent case of *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), wherein the Court construed a bankruptcy statute as having solely prospective effect in order to avoid "the serious questions of due process" raised by its retrospective application to the vested rights of creditors. The Court followed the general rule that a statute will, when possible, be interpreted and applied only prospectively so as to preserve its validity. Gould invites us to take this course, although the reexamination statute is by its express terms retrospective.

The public interest served by a retrospective statute is a dominant consideration in modern jurisprudence. Control Laser cites recent decisions upholding pension legislation that imposed certain retrospective penalties in order to discourage pension fund withdrawals by employers seeking to avoid the obligations of the statute; retroactive application of the penalties served an overriding public policy. Nevertheless, the weight of authority lies heavily against retroactive legislation, and a complex and careful jurisprudence has developed surrounding retroactive civil laws.

### A. The Purposes of Reexamination

Modern due process inquiry includes a determination of whether the legislature used a rational approach to achieve a legitimate end. *Usery v. Turner Elkhorn*, 428 U.S. at 18–19, 96 S.Ct. at 2893–2894. The reexamination statute enabled the PTO to recover administrative jurisdiction over an issued patent in order to remedy any defects in the examination which that agency had initially conducted and which led to the grant of the patent. Before its enactment, the methods of achieving administrative review of an issued patent were very limited. Gould emphasizes that such review could not be achieved other than at the initiative of the patentee. At the time Gordon Gould's patents were issued, there was no way the PTO or private persons could have forced these patents back into the examination phase against his will (except for their involvement in an interference). Issues fundamental to PTO reexamination, such as the raising of new questions of patentability and the cancellation of claims of issued patents, prior to Public Law 96–517 could be resolved only by action of an Article III court. *See Iowa State University Research Foundation, Inc. v. Sperry Rand Corp.*, 444 F.2d 406, 409, 170 USPQ 374, 377 (4th Cir.1971).

Congress had an important public purpose in mind when it enacted the reexamination statute. The statute was part of a larger effort to revive United States industry's competitive vitality by restoring confidence in the validity of patents issued by the PTO. In 1979 President Carter in his Industrial Innovation Initiative Message to Congress announced his intention to seek reexamination legislation, stating that "Patents can provide a vital incentive for innovation, but the patent process has become expensive, time-consuming, and unreliable." 15 Weekly Comp. of Pres.Doc. 2069, 2070 (Oct. 31, 1979). Senator Birch Bayh echoed this concern when he explained "I introduced this legislation because of my conviction that a strong, dependable patent system is absolutely essential to our continued ability to innovate to meet the challenges of the future." *Patent Reexamination: Hearings on S. 1679 Before the Comm. on the Judiciary*, 96th Cong., 1st Sess. 1 (1979) (*Senate Hearings*). Congressman Kastenmeier, who introduced the legislation in the House, de-

Harv.L.Rev. 692 (1960), and references cited therein.

scribed the bill as "an effort to reverse the current decline in U.S. productivity by strengthening the patent and copyright systems to improve investor confidence in new technology". 126 Cong.Rec. 29,895 (1980).

The bill's proponents foresaw three principal benefits. First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases. Second, the procedure would allow courts to refer patent validity questions to the expertise of the Patent Office. *See Senate Hearings* at 1, wherein Senator Bayh said that reexamination would be "an aid" to the trial court "in making an informed decision on the patent's validity". Third, reexamination would reinforce "investor confidence in the certainty of patent rights" by affording the PTO a broader opportunity to review "doubtful patents". 126 Cong.Rec. 29,895 (1980) (statement of Rep. Kastenmeier).

When Congress voted the reexamination statute into law, it had before it a voluminous record to the effect that the procedure was an important step forward for the United States patent system and for the public interest that the system is charged to serve. Congress, without apparent objection, applied the legislation to all unexpired patents.

### B. Analysis

Whether the retrospective scope of the reexamination statute may be upheld requires consideration of the nature and the magnitude of its intrusion on preexisting property values. Gould does not assert that his preexisting patents are protected from invalidation, but only that they are protected from reexamination. For purposes of analysis, we assume without deciding that reexamination *per se* does intrude on Gould's patents, and that Gould has standing to challenge the reexamination statute before action under it has resulted in cancellation of any of his claims.

Early Fifth Amendment analyses of retroactive statutes concluded that although the legislature might modify the exercise of a preexisting property right, it could not abolish the right itself. *Crane v. Hahlo,* 258 U.S. 142, 147, 42 S.Ct. 214, 215, 66 L.Ed. 514 (1922). In later cases the Supreme Court placed greater weight on policy considerations, and in *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the Court set out a multifactor inquiry for determining the effect of a particular governmental action, including "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations". The Court had enunciated in *Usery v. Turner Elkhorn* the principle that "legislative Acts adjusting the benefits and burdens of economic life come to the Court with a presumption of constitutionality", provided that the legislature did not act in an arbitrary or irrational way. 428 U.S. at 15, 96 S.Ct. at 2892. The jurisprudence reflects an evolutionary judicial balance of public and private interests in order to avoid straining either the Constitution or principles of basic fairness while accommodating an increasingly regulated society.

An element in Fifth Amendment analysis is the extent to which a person had changed position in reliance upon the prior law. Gould had conducted five years of pre-trial preparation in accordance with the law that was in effect when his patents were granted. Gould asserts that his reliance on this law, commencing well before enactment of the reexamination statute, placed him in a position where enactment of the statute and the PTO's resulting reexamination worked a significant hardship. The frustration of reasonable, investment-backed expectations is a factor to be considered in Fifth Amendment analysis, *see Kaiser Aetna,* 444 U.S. at 175, 100 S.Ct. at 390; and illustrates the potential for uneven impact that exists in any public enactment. Yet this impact was not due solely to the retrospective provision in the reexamination statute: relief was within the discretion of the Florida court, which nevertheless chose to enable the benefits of

PTO reexamination. Other courts have exercised their discretion variously. *Toro Co. v. L.R. Nelson Corp.*, 223 USPQ 636 (C.D.Ill.1984) (stay refused by district court); *In re Yamamoto*, 740 F.2d 1569, 222 USPQ 934 (Fed.Cir.1984) (stay granted by district court). Such judicial discretion is in harmony with the Congressional purpose.

In weighing the application of the *Penn Central* standard to Gould's property rights, we also consider that the effect, if any, of reexamination is temporary with respect to correctly granted patents. If the patents are upheld upon reexamination Gould will continue to possess the entire bundle of property rights that accompany a valid patent. Control Laser and the Commissioner remind us that Gould may recover damages from those who have infringed in the interim. The full recompense that Gould seeks in his licensing program is not barred from ultimate recovery.

Nor are we required to ignore the benefits that may accrue to Gould following successful reexamination of the patents. This court's remarks with respect to a successful reissue application are pertinent:

> [I]t is clearly appropriate that the jury be instructed that because the PTO has now held the claims in suit patentable in light of the additional art discovered by Sowa, its burden of proof of unpatentability has become more difficult to sustain—a fact likewise to be taken into account by the trial judge.

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1354, 720 USPQ 763, 774 (Fed.Cir.1984).

In serving the public purpose of the improved administration of law by the government, the reexamination statute was considered to be a significant improvement in the patent system. We view the reexamination statute as of the class of "curative" statutes, designed to cure defects in an administrative system. Curative statutes have received relatively favored treatment from the courts even when applied retroactively. For an expression of this principle we refer to *Graham & Foster v.*

*Goodcell*, 282 U.S. 409, 429, 51 S.Ct. 186, 194, 75 L.Ed. 415 (1931), in which the Court commented:

> Where the asserted vested right, not being linked to any substantial equity, arises from the mistake of officers purporting to administer the law in the name of the Government, the legislature is not prevented from curing the defect in administration simply because the effect may be to destroy causes of action which would otherwise exist.

The legislative history of the reexamination statute makes clear that its purpose is to cure defects in administrative agency action with regard to particular patents and to remedy perceived shortcomings in the system by which patents are issued. An important factor was its intended retroactive extension to all extant patents.

■ We conclude, as did the district court, that the overriding public purposes Congress articulated in enacting the reexamination law with retroactive effect are entitled to great weight, and that Congress did not act in an arbitrary and irrational way to achieve its desired purposes. We affirm the district court in upholding the validity of the retroactive statute against Gould's challenge under the Fifth Amendment.

### IV. The Seventh Amendment and Article III

Gould asserts that he has been deprived of the right to have validity determined by a jury and an Article III court, both of which rights are founded in the Constitution. Gould argues that these rights were part of the bundle of property rights that accompanied the grant of his patents, and thus that the retroactive scope of reexamination worked a prohibited deprivation.

■ The right to a jury trial on issues of patent validity that may arise in a suit for patent infringement is protected by the Seventh Amendment. *See Swofford v. B & W, Inc.*, 336 F.2d 406, 142 USPQ 291 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). Gould's

position is that, even if his patents may have been erroneously issued, the law in effect at the time of that issuance entitled him to a jury determination of that question.

Similarly, Gould complains of the loss of his historic right to have validity determined by an Article III court. The Court in *McCormick Harvesting Machine Co. v. Aultman*, 169 U.S. 606, 18 S.Ct. 443, 42 L.Ed. 875 (1898), establishing on constitutional grounds that an applicant for a reissue patent need not acquiesce in any finding of invalidity or unpatentability by the reissue examiner, affirmed that an issued patent could not be set aside other than by an Article III court.

Thus, Gould presents a facial attack on that aspect of the reexamination statute which grants the PTO authority to set aside claims in issued patents, as applied to patents granted prior to enactment of the statute.

Gould directs our attention to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), wherein the Supreme Court refused to uphold the legislative assignment to bankruptcy courts of common law disputes historically adjudicated by Article III courts. Gould observes that the outcome in *Northern Pipeline* shows the Court's unwillingness to allow rights that traditionally had been adjudicated in Article III courts to be shifted to Article I courts. But other factors were relevant, particularly that the matters proposed to be committed to Article I courts involved "private rights"; the Court therefore found inapplicable authority upholding "the constitutionality of legislative courts and administrative agencies created by Congress to adjudicate cases involving 'public rights'". The Court observed that "a matter of public rights must at a minimum arise 'between the government and others'". *Id.* at 69–70, 102 S.Ct. at 2870–71, *quoting Crowell v. Benson*, 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932).

In contrast with the private rights at issue in *Northern Pipeline*, the grant of a valid patent is primarily a public concern. Validity often is brought into question in disputes between private parties, but the threshold question usually is whether the PTO, under the authority assigned to it by Congress, properly granted the patent. At issue is a right that can only be conferred by the government. See *Crowell v. Benson*, 285 U.S. at 50, 52 S.Ct. at 292. Thus we find no constitutional infirmity, under the analysis suggested by *Northern Pipeline*, in patent reexamination by the PTO.

The holding of *McCormick Harvesting* may also be distinguished, in view of Congressional intent to provide a separate procedure for reexamination while preserving the reissue practice. The purpose of reissuance of patents is to enable correction of errors made by the inventor, at the initiative of the inventor. The reexamination statute's purpose is to correct errors made by the government, to remedy defective governmental (not private) action, and if need be to remove patents that should never have been granted. We do not read *McCormick Harvesting* as forbidding Congress to authorize reexamination to correct governmental mistakes, even against the will of the patent owner. A defectively examined and therefore erroneously granted patent must yield to the reasonable Congressional purpose of facilitating the correction of governmental mistakes. This Congressional purpose is presumptively correct, and we find that it carries no insult to the Seventh Amendment and Article III.

The Commissioner reminds us of the complex structure of modern government through administrative agencies, and we agree that such delegation of administrative functions, often including quasi-judicial functions, is now beyond facial challenge—provided that constitutional safeguards are respected. The massive body of jurisprudence that suffered the evolution of administrative agencies in the federal government insisted on fair opportunity for judicial review and full respect for due process. When these standards are met,

the Constitution does not require that we strike down statutes, otherwise having a reasonable legislative purpose, that invest administrative agencies with regulatory functions previously filled by judge and jury.

The extensive jurisprudence interpreting and applying the Seventh Amendment and Article III supports our conclusion, affirming that of the district court, that Gould has not suffered a constitutional deprivation of any rights under the Amendment or Article by virtue of either the postponement of the exercise of these rights, or by interposition of reexamination.

## V. The Presumption of Validity

Pertinent to Gould's concerns about access to judge and jury for validity determination is his argument that his issued patents are cloaked in a statutory presumption of validity [11] that is not respected in reexamination, and therefore that he has been deprived of this right which accompanied the grant of his patents.

■ Although the Commissioner argued that Gould's patents retain their section 282 presumption of validity during reexamination, 35 U.S.C. § 305 requires that both unexamined patent applications and patents in reexamination be processed by identical procedures. We share Gould's view that the PTO rules governing reexamination show scant respect for a section 282 presumption, and agree with the district court that section 282 is not applicable in reexamination proceedings. *See In re Etter*, 756 F.2d 852, 855–59 (Fed.Cir.1985). Nor does it meet the statutory purpose of section 282, whose origin is the presumption of administrative correctness, to apply this presumption to a procedure whose purpose is the remedy of administrative error.

■ Gould argues that if section 282 does not apply in reexamination, this presents grounds for vacating the reexamination of his preexisting patents. He argues that at the time his patent rights were granted judicial review was the only available method of review of patent validity, and this was accompanied by the benefits of the section 282 presumption; and therefore that the retroactive scope of the reexamination statute has deprived Gould of the benefits of section 282.

We do not consider the section 282 presumption, which represents a procedure created by statute to govern litigation, to be a property right subject to the protection of the Constitution. Even accepting Gould's argument, any adverse effect of loss of this presumption, balanced against the public purposes of the reexamination statute, would not negate the constitutional validity of this retroactive statute.

## VI. PTO Procedures

Gould challenges several of the implementing rules and regulations of the Patent and Trademark Office, relating to: the conditions for stay of reexamination stated in MPEP § 2286; the standards applied in reaching a decision to grant reexamination as set out in 37 C.F.R. § 1.530(a) and MPEP §§ 2240 and 2244; and the fee structure of 37 C.F.R. § 1.26(c).

■ Congress in performance of its legislative functions may leave it to administrative officials to establish rules within the prescribed limits of the statute. *United States v. Grimaud*, 220 U.S. 506, 517, 31 S.Ct. 480, 483, 55 L.Ed. 563 (1911). A statute that is valid on its face may nevertheless be administered in such a way that constitutional or statutory guarantees are violated:

> [The courts] must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.

11. 35 U.S.C. § 282 states "[a] patent shall be presumed valid. Each claim of a patent ... shall be presumed valid independently of the validity of other claims.... The burden of establishing invalidity ... shall rest on the party asserting such invalidity...."

*Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981).

■ The PTO operates in accordance with detailed rules and regulations, including those set out in the Manual of Patent Examining Procedure (MPEP) which is made available to the public and which has been held to describe procedures on which the public can rely. *In re Kaghan*, 387 F.2d 398, 401, 156 USPQ 130, 132 (CCPA 1967). Our standard for review is whether the rule or procedure is within the agency's statutory authority and is reasonably related to the purposes of the enabling legislation, *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973), and does no violence to due process. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The rules and procedures here challenged all relate to the threshold decision by the PTO of whether to reexamine Gould's patents.

### A. MPEP § 2286

■ MPEP § 2286 provides that the PTO will not stay its reexamination of a patent that is in litigation unless trial has commenced. As discussed *ante*, Gould asserts that this practice is directly contrary to the legislative purpose of providing an expeditious alternative to the entire process of litigation. Gould argues that in his case Congress' intention was defeated by the PTO's refusal to stay reexamination. He asserts that MPEP § 2286, whereby the PTO proceeded with reexamination of Gould's patents, is contrary to statutory authority and invalid, and reexamination of Gould's patents should be vacated.

The Commissioner responds that it is not for the PTO to decide whether trial will continue or be stayed, and takes issue with Gould's statement that the completion of pre-trial procedures is a sufficient assurance of imminent trial as to require the PTO to refrain from proceeding with a request for reexamination, even if proceeding with such request would delay the trial, as occurred in Gould's situation. The PTO also argues that the rule is in accord with the statute.

Essentially, Gould argues that the PTO should be required to exercise discretion on whether to proceed with reexamination in view of imminent trial, and that the failure to authorize and to exercise such discretion is a critical flaw in PTO practice, which alone or with other flaws requires us to vacate the reexamination process that Gould's patents are undergoing.

We find no merit in Gould's analogy to reissue practice, for we observe that PTO procedures are identical for both reissue and reexamination applications where a court has stayed litigation, *see* MPEP § 1442.03, suggested Form Paragraph 14.-07:

> While there is concurrent litigation related to this reissue application, action in this reissue application will NOT be stayed because a stay of that litigation is in effect for the purpose of awaiting the outcome of these reissue proceedings.

*See also* 37 C.F.R. 1.565(b).

Even if PTO discretion to stay reexamination were authorized it could not affect Gould's situation. The Florida district court did not invite the PTO to exercise discretion on whether to consider Control Laser's reexamination request, and did not defer to the PTO to decide whether reexamination or trial should proceed first. The Florida court itself stayed the trial in order for reexamination to be pursued. (The stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation.) The court never relinquished control of its right to proceed with the trial; and the PTO never was granted the right to decide whether or when trial would proceed.

On these facts, the PTO did not have the opportunity to exercise the discretion that Gould complains MPEP § 2286 prevents it from exercising. Whatever deprivation Gould may be experiencing due to the ongoing reexamination is not due to this administrative procedure, and we find no due

process question raised thereby. Nor do we find in § 2286 a derogation of the statutory purpose nor an undue extension of statutory authority. We affirm the district court on this issue.

### B. *37 C.F.R. §§ 1.530(a) and 1.26(c) and MPEP §§ 2240 and 2244*

Gould challenges the lawfulness of 37 C.F.R. § 1.530(a), which provides that no statement by a patentee shall be considered by the PTO during the three-month period set in 35 U.S.C. § 303 wherein the PTO is required to decide whether any substantial new question of patentability is raised. This objection is presented in the context of the PTO's "rule of doubt" expressed in MPEP §§ 2240 and 2244.[12] Gould argues that the procedure is flagrantly unfair, since the PTO must rely solely on the representations of the person who requests reexamination without opportunity for any explanation by the patentee. The statute does not prohibit such explanation, but 35 C.F.R. § 1.530(a) does. Gould asserts that the deprivation of the opportunity to be heard at this threshold stage violates due process.

Gould also protests 37 C.F.R. § 1.26(c), arguing that the $1,500 fee for reexamination unlawfully weights the PTO's initial decision in favor of granting reexamination, because only if reexamination is granted will the PTO avoid refunding $1,200 of the $1,500.

Gould conceded before the district court, for the purpose of this case, that a substantial new question of patentability had been raised in the requests for reexamination of the two patents here at issue. Thus the challenged procedures of 37 C.F.R. §§ 1.530(a) and 1.26(c), and MPEP §§ 2240

and 2244, did not apply to Gould's detriment. In the absence of justiciable controversy with respect to these provisions, Gould does not have standing to challenge them. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

### VII

In summary, we affirm the decision of the district court that 35 U.S.C. §§ 301–307, as applied retroactively to Gould's issued patents, do not violate the Fifth Amendment or the Seventh Amendment or Article III; that 35 U.S.C. § 282 does not apply to reexamination; and that MPEP § 2286 does not violate statutory and constitutional restraints. The decision of the district court that 37 C.F.R. §§ 1.26(c) and 1.530(a), and those portions of MPEP §§ 2240 and 2244 that impose a rule of doubt on the decision to reexamine, do not violate statutory and constitutional restraints is vacated in view of Gould's lack of standing to raise these issues.

Each party will bear its own costs.

AFFIRMED IN PART and VACATED IN PART.

---

12. The pertinent provisions are:

   35 U.S.C. § 303(a). Within three months following the filing of a request for reexamination ... the Commissioner will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request....

   37 C.F.R. § 1.530(a). [N]o statement or other response by the patent owner shall be filed prior to the determinations made.... If a premature statement or other response is filed by the patent owner it will not be acknowledged or considered in making the determination.

   MPEP § 2240. Where doubts exist, all questions should be resolved in favor of granting the request....

   MPEP § 2244. Any question as to whether a substantial new question of patentability exists should be resolved in favor of granting the request for reexamination.