NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1133

JORGE TAYLOR,

Plaintiff-Appellant,

v.

UNITED STATES PATENT AND TRADEMARK OFFICE,

Defendant-Appellee.

Jorge Taylor, of New York, New York, pro se.

Raymond T. Chen, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, for the Director of the United States Patent and Trademark Office. With him on the brief were Thomas W. Krause and Joseph G. Piccolo, Associate Solicitors.

Appealed from: United States District Court for the Southern District of New York

Senior Judge Harold Baer, Jr.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1133

JORGE TAYLOR,

Plaintiff-Appellant,

v.

UNITED STATES PATENT AND TRADEMARK OFFICE,

Defendant-Appellee.

On appeal from the United States District Court for the Southern District of New York in Case No. 08-CV-8634, Senior Judge Harold Baer, Jr.

_____

DECIDED: August 4, 2009

_____

Before MICHEL, <u>Chief Judge</u>, LOURIE, and RADER, <u>Circuit Judges</u>.

PER CURIAM.

The United States District Court for the Southern District of New York dismissed pro se plaintiff Jorge Taylor's suit against the United States Patent and Trademark Office (PTO or Office) seeking return of $1030 he paid to the PTO, as well as monetary remedies. Because the PTO was arbitrary and capricious in its failure to notify Mr. Taylor of the minor insufficiencies in his attempted payment of a patent maintenance fee, this court reverses and remands.

I.

On January 12, 1993, the PTO granted Mr. Taylor a patent for a chemical sealant device for repairing flat tires: U.S. Patent No. 5,178,701. Under PTO regulations, Mr.

Taylor had a window between January 12, 2000 and July 12, 2000 to pay the required $975 seven-and-a-half-year maintenance fee without a surcharge, and a window between July 13, 2000 and January 12, 2001 to pay the $975 fee with a $65 surcharge ($1040 total).

The record shows that Mr. Taylor placed a check for $1030, rather than $1040, in the mail on January 12, 2001. Mr. Taylor alleges that the PTO informed him by phone that his required fee was $1030. Notably, Mr. Taylor used the wrong form (PTO/SB 17 instead of PTO/SB 45) for transmitting his payment, and sent it to the Applications Branch rather than the Maintenance Fee branch. Mr. Taylor's form indicates that $945 should be applied to an "Extension for reply within fifth month" and that $65 should be applied to a surcharge for "late filing fee or oath." Mr. Taylor marked in prominent capital letters at the top of his transmittal form: "NOTE: IF THIS IS NOT THE CORRECT FORM, PLEASE MAIL THE CORRECT FORM TO THE RETURN ADDRESS ON THE CHECK."

The PTO posits that the PTO employee who processed the form may not have recognized this filing as an attempt to pay a maintenance fee, and may have processed it as a regular application filing fee. In any event, the PTO received the $1030 check on January 17, 2001 and deposited the check in its account.

Several years later, in 2004, Mr. Taylor called the Office in preparation for paying the required eleven-and-a-half-year maintenance fee. During that conversation, the PTO informed Mr. Taylor that it considered his patent expired for failure to pay the seven-and-a-half-year maintenance fee.

On February 27, 2005, Mr. Taylor wrote the PTO asking for reinstatement of his patent, which he characterized as having been "improperly expired on or about 1/12/01 . . . ." Mr. Taylor informed the Office that he was "not an attorney but a pauper disabled living on a fixed income (SSI) who cannot pay $200 to petition your office." Mr. Taylor enclosed a copy of his canceled check as proof of payment of $1030 in early 2001.

The PTO treated Mr. Taylor's letter as a petition under 37 C.F.R. § 1.377. However, in a letter mailed November 22, 2005, it dismissed the petition without consideration on the merits because Mr. Taylor had not submitted $200 as a petition filing fee, as required by § 1.377. The PTO advised Mr. Taylor that his payment of $1030 in January 2001 had been deficient by $10 and thus his patent was "properly considered expired." The Office further advised Mr. Taylor that he was not precluded from seeking reinstatement of the patent under the unavoidability standard of 37 C.F.R. § 1.378(b).

On January 18, 2006, Mr. Taylor wrote back to the PTO, insisting that he could not afford the $200 petition fee, but that he would "not wave [sic] my money nor my patent without a fight." Mr. Taylor wrote:

> 1) You never billed me, but told me over the phone that my fee was $1030.00. I paid you that much.
>
> 2) You cashed my check, pocketed my $1030.00 and expired my patent for lack of payment. You then never informed me otherwise. I also have proof that I paid this amount of $1030.00. You kept me in the dark over a $10.00 discrepancy for over 3 years so that you could keep the $1030.00 and expire my patent, without my knowledge, for lack of payment. If I did not pay the fee why would you cash my check? How convenient, like a thieve [sic] in the night, never informed me of your malfeasant [sic]. If there were any discrepancies as to the fee owed and the fee paid, you should have made me aware so that the transaction could have been corrected.

In a June 21, 2006 decision, the PTO informed Mr. Taylor that "[g]iven the continued failure to submit the petition fee, the petition under § 1.377 is again DISMISSED without consideration on the merits." The Office explained that even if it could waive the petition fee, it could not grant the petition, because Mr. Taylor had only submitted $1030 of the required $1040. The Office also pointed out that Mr. Taylor's original payment had not included a certificate of mailing. Thus, because the Office received the payment on January 17, 2001, five days had passed beyond the window for accepting maintenance payments with surcharge. The decision again explained that Mr. Taylor could seek reinstatement of his patent under 37 C.F.R. § 1.378(b).

Two years later, in June, 2008, Mr. Taylor filed a complaint against the PTO in the United States District Court for the Southern District of New York, alleging that the PTO had "misappropriated" his $1030. Mr. Taylor sought redress in the amount of $1 billion, his estimation of the worth of his intellectual property "in the U.S. and world market."

The district court dismissed the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. The court found that PTO regulations do not provide a waiver of petition filing fees for indigent applicants, such that Mr. Taylor's failure to pay the $200 fee prevented the consideration of a claim arising out of the PTO's denial of his petition. The court also found that Mr. Taylor had not shown that the PTO's actions were "arbitrary and capricious" for purposes of making out a claim under the Administrative Procedure Act because the Office "has given plaintiff instructions on how to file a petition and plaintiff has not alleged that defendant

handled his concerns any differently than the agency handles matters of other applicants."

Mr. Taylor appealed to this court without paying the required appeal fee, and this court initially dismissed the appeal for failure to pay that fee. After Mr. Taylor filed a petition to proceed in forma pauperis, this court reinstated the appeal by order dated April 8, 2009. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

II.

In reviewing cases dismissed under Fed. R. Civ. P. 12(b)(6), this court applies the law of the regional circuit. Phonometrics v. Hospitality Franchise Sys., 203 F.3d 790, 793 (Fed. Cir. 2000). The United States Court of Appeals for the Second Circuit reviews a dismissal for failure to state a claim upon which relief can be granted without deference. See, e.g., Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000). This court must also accept as true the factual allegations in the complaint, make inferences from those allegations in the light most favorable to the plaintiffs, and liberally construe the complaint. See, e.g., Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).

35 U.S.C. § 41(b) requires that the Director of the PTO charge maintenance fees at 3 years and 6 months, 7 years and 6 months, and 11 years and 6 months after grant. The statute provides that "[u]nless payment of the applicable maintenance fee is received in the Patent and Trademark Office on or before the date the fee is due or within a grace period of 6 months thereafter, the patent will expire as of the end of such grace period." 35 U.S.C. § 41(b). However, the statute also provides that the Director can accept late payment of a maintenance fee if the delay is shown to be "unavoidable." Id. § 41(c)(1).

The PTO's implementing regulations provide that "[a]ny patentee who is dissatisfied with the refusal of the Patent and Trademark Office to accept and record a maintenance fee which was filed prior to the expiration of the patent may petition the Director to accept and record the maintenance fee." 37 C.F.R. § 1.377(a). The regulations also require that any petitions regarding the Office's acceptance of maintenance fees "must be accompanied by the fee set forth in § 1.17(g)." Id. § 1.377(b).

Under the Administrative Procedure Act, a "final agency action" is required before judicial review is appropriate. 5 U.S.C. § 704. Other agency actions, such as "preliminary, procedural, or intermediate agency action or ruling[s]," are "not directly reviewable" and "subject to review on the review of the final agency action." Id. The district court focused on this requirement of "exhaustion" of administrative remedies in dismissing Mr. Taylor's complaint. No doubt, in the instant case, in dismissing Mr. Taylor's petition for failure to pay the required petition fee, the PTO has not finally acted. The PTO's internal operating procedures specify that a dismissal of a petition is not a final agency action. Manual of Patent Examining Procedure (MPEP) § 1002.02 (8th ed., rev. 7, July 2008).

However, the district court overlooked a crucial aspect of the PTO's treatment of Mr. Taylor's attempted payment. The unrebutted record shows that the PTO did not inform Mr. Taylor that his January 2001 payment of $1030 was deficient by $10. Instead, the record shows that the PTO cashed Mr. Taylor's check and still proceeded to consider his patent expired. These actions are inconsistent with the PTO's obligation

under MPEP § 2531 to provide a "Notice of Non-Acceptance of Patent Maintenance Fee" to the "fee submitter," here Mr. Taylor.  Section 2531 provides:

> If the Office considers a payment to be late or insufficient, a notice (e.g., a Notice of Non-Acceptance of Patent Maintenance Fee (PTO-2142)) will be sent to the "fee submitter."  Reply to the notice is required prior to expiration of the grace period provided by 37 CFR 1.362(e) in order to avoid the expiration of the patent.  If a reply is not received prior to expiration of the patent, then an appropriate petition under 37 CFR  1.377 or 37 CFR  1.378 is required.

MPEP § 2531.

Although the MPEP "does not have the force of law," Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1425 (Fed. Cir. 1988), it "has been held to describe procedures on which the public can rely."  Patlex Corp. v. Mossinghoff, 758 F.2d 594, 606 (Fed. Cir. 1985).  In this case, the MPEP notice to the fee submitter of maintenance fee insufficiency accords with the most basic notions of fairness and procedural due process.  This court finds that the Office's course of action in accepting Mr. Taylor's deficient payment on the one hand, while on the other hand expiring his patent without notifying him under MPEP § 2531 that his payment was inadequate, was arbitrary and capricious.

This court notes with approval that the PTO has unilaterally decided to refund Mr. Taylor $1030, which corresponds to his original attempted payment.  Moreover, the PTO has also advised Mr. Taylor that he remains eligible to file a petition, along with $200, to have his patent reinstated for unavoidable delay, should he choose to do so.

However, in this case, after arbitrary PTO actions, this court perceives no need for Mr. Taylor to submit further petitions.  Indeed, the PTO's brief suggests further obstacles for Mr. Taylor should he choose to pursue an unavoidable delay petition:

> The USPTO notes that even if the failure to properly pay the 7.5-year maintenance fee could be overlooked, Mr. Taylor has now also failed to

pay the 11.5 year maintenance fee, and has also missed the deadline for reinstatement based on "unintentional delay" of that payment. Thus, any petition for reinstatement of his patent at this point would have to establish unavoidable delay for his failure to pay that maintenance fee as well.

Appellee Br. 11.

This court notes, however, that Mr. Taylor did attempt to make his eleven-and-a-half year maintenance fee payment in 2004. This action further evinces the reasonableness of his course of action in this process. By contrast, the PTO's action in taking Mr. Taylor's payment without notifying him of its deficiency is not reasonable.

Mr. Taylor's informal complaint at the district court broadly requested the court to grant him any relief deemed appropriate. This court determines that the appropriate relief in this case is equitable. A district court's equity jurisdiction provides broad and flexible powers to deliver justice in unique factual circumstances. "The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action. Equitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision." Freeman v. Pitts, 503 U.S. 467, 487 (1992). In this case, equity would counsel that the PTO should reinstate Mr. Taylor's patent upon receipt of his payment for all outstanding maintenance fees. This relief will remedy, to this court's best estimation, the PTO's arbitrary and capricious actions.

III.

Because the district court should not have dismissed Mr. Taylor's complaint, this court reverses. This court remands to the district court with instructions to enter judgment in accordance with this opinion.

<u>REVERSED</u> and <u>REMANDED</u>


COSTS

No costs.