**STANDARD HAVENS PRODUCTS, INC., Plaintiff,**

v.

**GENCOR INDUSTRIES, INC., Defendant.**

**No. 88–1209–CV–W–3.**

United States District Court, W.D. Missouri, W.D.

Jan. 27, 1993.

Joseph B. Bowman, Thomas P. McBirde, Kokjer, Kricher, Bradley Wharton Bowman & Johnson, Kansas City, MO, for plaintiff.

Constantine L. Corpas, Corpas & Phys, Cleveland, OH, John R. Cleary, D.A.N. Chase, Linde Thomson Fairchild Langworthy, Kohn & Van Dyke, P.C., Kansas City, MO, for defendant.

## ORDER

ELMO B. HUNTER, Senior District Judge.

This is a case of patent infringement which was tried before this Court to a jury. The jury returned a verdict in favor of the plaintiff, Standard Havens Products, Inc. (Standard Havens), finding that the patent in question was not invalid and that defendant Gencor Industries, Inc. (Gencor), wilfully infringed the patent. The jury awarded damages in the amount of $5,931,000.00, on the basis of what it found to be ten (10) infringing sales and, also, awarded damages in the amount of $2,284,000.00 for breach of contract.

Defendant Gencor appealed. The Court of Appeals for the Federal Circuit affirmed this Court on the issues of patent validity and infringement but vacated the amount of damages awarded, 953 F.2d 1360.

As noted above, the jury found that there were ten (10) infringing sales, which resulted in $5,931,000.00 in damages. The appellate court, however, determined that there were only six (6), (not ten (10)) infringing sales. The appellate court vacated the damage award and remanded the matter to this Court for recalculation of the damages based on the six (6) infringing sales.

As previously noted, the jury, also, found that plaintiff was entitled to $2,284,000.00 for breach of contract. A component of the contract damages was attributable to projected future sales. The appellate court, essentially, held that the future sales component was too speculative to support a damage award. Accordingly, the appellate court, in its remand, instructed this Court to recompute the contract damages excluding any portion attributable to the projected future sales.

This Court also entered a permanent injunction against Gencor. During the appeal, the Federal Circuit granted Gencor a conditional stay of the injunction entered by this Court. On remand, the Federal Circuit ordered its stay to remain in effect until this Court had the opportunity to consider whether, under the circumstances, continuation of the injunction was appropriate. It instructed that, in making its determination, this Court "should take into account the unusual aspects of this case." Specifically, while this matter was on appeal, the Patent and Trademark Office (PTO) issued a reexamination decision determining that certain claims of the patent-in-suit, in this matter, are unpatentable. Standard Havens has challenged this determination in the District Court for the District of Columbia.

## I.

Presently before the Court is defendant Gencor's Motion for Stay of Injunction and Stay of Proceedings. Gencor is requesting an order staying this Court's earlier issued permanent injunction and staying all further proceedings until a final decision issues in the above-referenced reexamination case. The parties have comprehensively briefed and argued the issues related to this motion.[1] Indeed, the Court recalls few

---

1. The parties have filed and the Court has considered the following:
    (1) Gencor's Motion for Stay of Injunction and Stay of Proceedings (Doc. # 263); Suggestions in Support thereof (Doc. # 264); and Exhibits (Doc. # 265);
    (2) Standard Havens' Suggestions In Opposition and Exhibits (Doc. # 270);
    (3) Gencor's Reply to Standard Havens' Response (Doc. # 272) and Exhibits (Doc. # 273);
    (4) Standard Havens' Reply to Gencor's Reply and Appendix (Doc. # 275);
    (5) Gencor's Supplemental Brief and Exhibits (Doc. # 276);
    (6) Standard Havens' Supplemental Brief in Response to Gencor's Brief (Doc. # 278);
    (7) Gencor's Response to Standard Havens' Supplemental Brief (Doc. # 279);
    (8) Additional Evidence in Opposition to Gencor's Motion (Doc. # 280);
    (9) Gencor's Notice of Parallel Proceedings (Doc. # 281); and
    (10) Miscellaneous letters and documents addressing or related to the issues raised by Gencor's motion.

issues that have received the attention the parties have given this matter.

Much of the argument between the parties arises from the fact that the parties and the patent at issue in this case are currently involved in separate reexamination proceedings being prosecuted in another forum. To wit, the patent in question was "re-examined" by the Patent and Trademark Office (PTO) and found to be invalid.[2] Of course, this determination is subject to judicial review. *See* 35 U.S.C.A. § 306 (1984) (patent owner may seek court review pursuant to 35 U.S.C. §§ 141–145). Defendant urges that if it is judicially and finally determined that the patent in question is invalid, the patent would be void *ab initio*, thereby removing the basis for this Court's earlier judgment. Plaintiff counters that there has already been a judicial determination that the patent in question has been infringed, that defendant continues to infringe such patent, and that any determination as to the validity of the patent in question made in another forum is not controlling in this case.

At the end of the day, this Court agrees with the plaintiff.[3] A jury found in favor of the plaintiff as to the validity of the patent and found that it had been wilfully infringed by the defendant. The determination of these issues has been affirmed by the United States Court of Appeals for the Federal Circuit. The action pending in the other forum is an action for reexamination and, regardless of the outcome, is not controlling in this matter. *See Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1427 (Fed.Cir. 1988) (reexamination proceedings considering patentability are separate and distinct from lawsuits involving infringement and patent validity and have separate records and different standards of proof). It is this Court's view that plaintiff, in this matter, possesses the equivalent of a final judgment on the issues of patent validity and infringement and is entitled to have defendant enjoined from further infringing sales.

## II.

■ The Court notes that, in this matter, the trial was completed and a verdict rendered prior to commencement of the reexamination proceeding. While the matter was on appeal, however, the Court of Appeals was fully cognizant of the pendency of the reexamination proceedings. In fact, after the PTO Board of Appeals ruled against Standard Havens on the reexamination issue, and while the parties were still awaiting the Federal Circuit's decision in this matter, Gencor moved the Federal Circuit to estop Standard Havens from denying the invalidity of the patent-in-suit. Had the Federal Circuit believed the reexamination determination made by the PTO to be dispositive of this case, it could have so ruled. The Federal Circuit, however, denied Gencor's motion and proceeded to rule on all issues raised by this District Court's judgment, which it characterized as "ripe for decision on appeal."

The Court also notes that, prior to issuing its decision on appeal, the Federal Circuit directed Standard Havens and Gencor to submit supplemental briefs as to whether the appeal to the Federal Circuit should be suspended until a final unappealable

---

Additionally, the parties have appeared, in person, before the Court and advocated their respective positions.

**2.** Current patent law allows that "[a]ny person at any time may file a request for reexamination ... of any claim of a patent on the basis of any prior art." 35 U.S.C.A. § 302 (1984). Additionally, the Commissioner "[o]n his own initiative, and any time, ... may determine whether a substantial new question of patentability is raised by patents and publications discovered by him." 35 U.S.C.A. § 303(a) (1984).

Plaintiff contends that the PTO's reexamination proceeding came at the urging of defendant Gencor. In the main, defendant disputes this

contention. In any event, it is clear that counsel for defendant did have some contact with the PTO at or around the time the issue of reexamination was taken up. It is reasonable to conclude that, at a minimum, Gencor's contact with the PTO increased its interest in conducting the reexamination.

**3.** The Court has found no controlling on point authority (and defendant has cited none) dictating that if it is judicially and finally determined, in a separate proceeding, that the patent in question is invalid, the patent would be void *ab initio*, thereby effectively voiding this Court's earlier judgment.

decision had been rendered regarding the PTO's reexamination determination. It is significant that Gencor, which now argues that this Court should stay all proceedings, strenuously opposed suspension of the appeal, at the very time it had the opportunity to persuade the Federal Circuit to hold matters in abeyance.

Neither Gencor nor the Federal Circuit Court of Appeals deemed it wise or necessary to hold this matter in abeyance until a final unappealable decision on the PTO's reexamination determination had been issued. Similarly, this Court is convinced it is time to move toward final disposition of this case.

### III.

■ The Federal Circuit opined that certain circumstances occurring since this Court originally issued its injunction bear on whether the Court should now entertain a stay. As noted above, the Circuit Court specifically referred to the PTO's reexamination decision (determining that the claims of patent-in-suit are unpatentable) as part of the special circumstances this Court may want to consider. The PTO's determination is currently on appeal to the District Court for the District of Columbia. The appellate court also noted that Gencor's shaky financial condition has not changed since the Circuit Court granted a stay February 23, 1990.

In deciding whether to grant Gencor's motion for a stay, four factors must be balanced:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); *see also E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,* 835 F.2d 277, 278 (Fed.Cir.1987); *Reserve Mining Co. v. United States,* 498 F.2d 1073, 1076–77 (8th Cir.1974) (party seeking stay must make

strong showing that it (1) is likely to succeed on the merits of the appeal; and a showing that (2) unless a stay is granted, it will suffer irreparable injury, and that (3) no substantial harm will come to the other interested parties, and that (4) a stay will do no harm to the public interest). Of course, these factors need not be applied woodenly or rigidly and, in fact, are sufficiently flexible to allow the Court to justly and equitably determine individual cases. *See generally Hilton,* 481 U.S. at 776, 107 S.Ct. at 2119; *DuPont,* 835 F.2d at 278; *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 387–88 (7th Cir.1984); *Washington Metro. Area Transit Comm'n v. Holiday Tours,* 559 F.2d 841, 844 (D.C.Cir. 1977). After full consideration of the matter, including the additional circumstances pointed out by the Federal Circuit, this Court declines to grant defendant's request for a further stay.

Defendant cannot demonstrate a strong showing that is likely to succeed on the merits. The merit issues—validity of the patent and infringement—have been reviewed and decided by the appellate court, as to this case. The Federal Circuit Court of Appeals affirmed this Court's determination in favor of the plaintiff on those issues.

Defendant argues that if the PTO's reexamination determination, which is on appeal in a parallel action being prosecuted in another district, is affirmed in the form of a final judgment then the patent at issue in this case would be void *ab initio,* thereby removing the basis for this Court's judgment on the patent infringement. As a result, defendant urges this Court's judgment would become a nullity.

Such a result would squarely confront the traditional concepts of res judicata, collateral estoppel, law of the case and finality, as understood by this Court. Indeed, defendant does not cite, and this Court could not find, a single controlling case that would compel such a result. In this case, this Court returned a plaintiff's verdict. The appellate court affirmed this Court as to the issues of patent validity and infringement. It remanded the matter

to this Court solely for the purpose of determining the appropriate amount for damages. The issues of patent validity and infringement have been finally decided as to this case. This Court apprehends of no case or rule of law that holds that a final judgment in a separate lawsuit, in a separate jurisdiction, which may or may not be rendered at some undetermined point in the future would control and, indeed, void this Court's judgment in this case. If that is the law or the intended result of the Reexamination Statute,[4] this Court would encourage the appellate court to squarely address the issue and say so. It is this Court's view that such appellate guidance, if called for, is necessary and would be welcomed.

Defendant contends that if the stay is not granted and the injunction issues it will be put out of business. Presumably this result will obtain because Gencor's business relies so heavily on the sales which have been found to be infringing. In such cases, the harm to the infringing party is not dispositive. The harm defendant might suffer simply reflects the success it has enjoyed through its infringing activity. *See Polaroid Corp. v. Eastman Kodak Co.*, 641 F.Supp. 828, 228 U.S.P.Q. 305, 342–44 (D.Mass.1985) *denial of stay aff'd* 833 F.2d 930 (Fed.Cir.1986). Defendant took a calculated risk with its infringing activity and lost: it should not now be allowed to complain of what were predictable results. *Id.* Put another way, "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n. 12 (Fed.Cir.), *cert. denied sub nom. BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986).

In its argument, Gencor speaks to the interests of several hundred employees it contends will be put out of work if this Court denies a stay. Of course, such a result is of no small moment in today's economy. As noted in *Eastman Kodak Co., supra*, however, the public policy primarily affected in patent cases is the protection of the rights secured by that are secured by valid patents. 228 U.S.P.Q. at 342–44. "Courts grant—or refuse to stay—injunctions in order to safeguard that policy, even if those injunctions discommode business and the consuming public." *Id.* Additionally, public policy has consistently favored the innovator, not the copier. *S.C. Johnson, Inc. v. Carter–Wallace, Inc.*, 225 U.S.P.Q. 968, 972, 1985 WL 501 (S.D.N.Y.1985) *aff'd in part, vacated in part* 781 F.2d 198 (Fed.Cir.1986).

Issuance of a stay would clearly and substantially injure the plaintiff. Once validity and infringement of a patent have been established "immediate irreparable harm is presumed." *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed.Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). Ten infringing sales were the basis of this lawsuit. More than twenty additional sales have subsequently occurred. Under the terms of the appellate court's stay, defendant Gencor was to pay $50,000.00 into an escrow account for each infringing sale. There is reason to question whether this amount is adequate to compensate plaintiff for damages resulting from each infringing sale. Additionally, the parties agree that the escrow account is otherwise encumbered and may not, in any event, be available to the plaintiff. Defendant concedes that its present financial condition remains shaky and that it may never be in a position to adequately compensate plaintiff for the infringement. Granting defendant's motion for a stay would only serve to further injure the plaintiff, without providing any satisfactory guarantee that defendant will ultimately compensate plaintiff for its infringing conduct.

■ With regard to where the public interest might lie, the appellate court stated that neither party provided a convincing argument that the public interest favored its position. Accordingly, the appellate

---

**4.** This Court's reference to the "Reexamination Statute" refers to 35 U.S.C. §§ 301–307, which was enacted by Congress in 1980 and provides for the reexamination of existing patents.

court found that one argument negated the other and therefore favored neither party.

It is this Court's view that the parties and the appellate court omitted from their considerations important aspects of the public interest. Certainly the public has an interest in swift, efficient, affordable and final resolution of all forms of civil litigation.[5] Such interest is reflected by the recent passage of the Civil Justice Reform Act of 1990 (CJRA), 28 U.S.C.A. §§ 471–482 (Supp.1992) (enacted as Title I of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089 (1990). The CJRA calls for a series of sweeping changes at the local and national levels targeted at making federal civil litigation more affordable, more accessible and less time consuming. *Id.; see also* J. Peck, *"Users United": The Civil Justice Reform Act of 1990,* 54 LAW & CONTEMP. PROBS. 105 (1991). The CJRA expressly seeks to "improve litigation management, and ensure just, speedy, and inexpensive resolutions of civil disputes." 28 U.S.C.A. § 471 (Supp.1992).

Additionally, the public interest as reflected by the important public purpose Congress had in mind when it enacted the patent Reexamination Statute (argued by defendant as a ground for granting its requested stay) is consistent with the aims of the CJRA. Passage of the Reexamination Statute "was part of a larger effort to revive United States industry's competitive vitality by restoring confidence in the validity of patents issued by the PTO." *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 601 (Fed.Cir.1985). Proponents of the Reexamination Statute sought to strengthen the patent and copyright systems, to provide a means to settle validity disputes more quickly and less expensively and to reinforce confidence in the certainty of patent rights. *Id.* at 602.

In this case, defendant would have the Reexamination Statute used to protract the length and inflate the cost of this litigation. It would be a perversion of purpose to allow the Reexamination Statute to be used to afford parties, who have lost after full and fair litigation in front of an Article III Court, the opportunity for a second bite of the apple, in a manner that would prolong existing litigation and start related litigation anew in another forum.

In this light, the Court finds that it is in the public interest to bring the instant litigation to a close as expeditiously as practicable, and that interest is served by denying defendant's motion for a stay.

Since the Federal Circuit's decision in *Smith International, Inc. v. Hughes Tool Co., supra,* district courts have consistently held that once patent validity and infringement have been determined, the holder of the patent is entitled to injunctive relief. Accordingly, it is hereby

ORDERED that defendant Gencor's Motion for Stay of Injunction and Stay of Proceedings is DENIED; and it is further

ORDERED that the temporary stay granted by the appellate court, which was to remain in effect until this Court had the opportunity to consider the special circumstances of this case, as related to the stay, is LIFTED IMMEDIATELY UPON FILING OF THIS ORDER; and it is further

ORDERED that the permanent injunction previously entered by this Court TAKES EFFECT IMMEDIATELY UPON FILING OF THIS ORDER.

IT IS SO ORDERED.

---

5. Few topics have received more commentary in recent years than the need to reform the system of civil litigation in this country. Articles, essays and other commentary are legion and are certainly too numerous to attempt to list. An indication of the interest in this area is reflected in a recent issue of LAW and CONTEMPORARY PROBLEMS, a journal published by the Duke University School of Law. 54 LAW & CONTEMP. PROBS. (Iss. #3) 1–252 (entire issue dedicated to Modern Civil Procedure: Issues in Controversy).